ANNA A. HARDY ET AL. V. JAMES A. BEATY ET AL.

No. 7049.

1. **Citation by Publication—Defective Affidavit.**—In a collateral attack upon a judgment rendered in a court of competent jurisdiction upon citation by publication, that a defective affidavit is found in the record and no other sufficient affidavit is preserved as basis for the issuance of the citation by publication, will not affect such judgment.

2. **Presumptions in Favor of Domestic Judgment.**—When a domestic judgment is attacked collaterally every presumption will be indulged in favor of the jurisdiction of the court and the validity of its judgment; and where it does not otherwise appear it will be presumed that the court ascertained all the facts necessary to its jurisdiction. To attack the jurisdiction it must affirmatively appear that the facts essential to it did not in fact exist.

3. **Same—Publication Suits.**—In construing the effect of judgments rendered upon constructive service by publication the same conclusive effect is given to them as to those rendered upon personal service.

4. **Citation by Publication.**—See citation by publication held sufficient to confer jurisdiction when collaterally attacked.

5. **Judgment in Rem — Minor Defendant.** — A suit prosecuted ·to judgment against the heirs of an owner of a land certificate for an interest in the land located by the plaintiff upon a contract with the intestate is a proceeding in rem, and such judgment fixes the title to the land located under such certificate as between the parties to the suit. So, if one of the heirs was a minor at the rendition of the judgment.

6. **Trespass to Try Title.** — The action of trespass to try title was intended as broad enough and effective in its scope to embrace all character of litigation that affects the title to real estate.

7. **Case Cited with Approval.**—Arndt v. Griggs, 134 U. S., 316, cited with approval, touching the power of the States and their courts over local matters and rights affecting real estate.

8. **Personal Judgment—Costs—Constructive Service.**—While an action for title to an undivided interest in a tract of land upon service by publication against nonresident defendants is valid, yet a judgment in personam for costs against such nonresidents is without jurisdiction, and sale under it void.

APPEAL from Bosque. Tried below before Hon. J. M. HALL.

No statement is necessary.

*S. H. Lumpkin,* for appellants.—1. A party seeking a benefit under a judgment rendered upon constructive service by publication, offering in connection with such judgment the record of said cause, is bound by such record; and if it appears therefrom that the suit was instituted in a District Court of Texas in 1854 to enforce the specific performance of a contract to convey land, and was against a deceased party or his unknown heirs, who were not found or served in Texas, but alleged to have died in the State of Alabama before institution of suit, and whose heirs were nonresident citizens of Texas, and that they did not appear except by a guardian appointed by the court, under citation by publication, and that the said suit was not for the partition of the land or by attachment, then the said judgment was absolutely void for the want

of jurisdiction in the court to hear and determine the said cause, both as to the jurisdiction of the said defendants, appointment of guardian, and of the subject matter in controversy; and if it should appear from the transcript and record offered in support of the judgment that no personal service was had on the defendants in the said cause other than by publication, then such constructive service is in derogation of the common law mode of acquiring jurisdiction, and must be strictly pursued in every particular under the statute authorizing such publication, in order to give the court jurisdiction over the defendants or their property. Gen. Laws 1848, p. 106, secs. 13, 14; Sayles' Early Laws, art. 1850; Gen. Laws 1866, p. 125; Sayles' Early Laws, art. 3336; Pasch. Dig., art. 5460; Stewart v. Anderson, 70 Texas, 588; Township v. Darlington, 101 U. S., 87; Hollingsworth v. Barbour, 4 Pet., 466; Pana v. Bowler, 107 U. S., 529; Hart v. Sansom, 110 U. S., 151; Harkness v. Hyde, 98 U. S., 476; Pennoyer v. Neff, 95 U. S., 713; Settlemier v. Sullivan, 97 U. S., 444; St. Clair v. Cox, 106 U. S., 350; Freem. on Judg., 3 ed., sec. 125.

As to defective citation: Stegall v. Huff, 54 Texas, 193; Collins v. Miller, 64 Texas, 118; Gilpin v. Page, 18 Wall., 350; Freem. on Judg., 3 ed., sec. 127; Cheeley v. Clayton, 110 U. S., 701.

As to the appointment of guardian ad litem: Simpson v. Mitchell, 47 Texas, 572.

As to residence of minor: Hardy v. De Leon, 5 Texas, 212.

2. The District Courts of Texas, under the Constitution and laws in force in 1854, and prior to the passage of the Act of November 9, 1866, had no jurisdiction over the person or estate of deceased persons or minors, and could not, as against them, enforce the specific performance of a contract to convey land. If any court had jurisdiction of such persons or their property it was the Probate Court. Const. 1845, art. 4, secs. 10, 15; Gen. Laws 1848; Pasch. Dig., arts. 1260, et seq., 1313; District Court Act of 1848, secs. 13, 14; Act of November 9, 1866; Sayles' Early Laws, arts. 1850, 3336; Pasch. Dig., art. 5460; Messner v. Giddings, 65 Texas, 301; Peters v. Phillips, 19 Texas, 70; Guilford v. Love, 49 Texas, 715.

3. The court erred on the trial of this cause in allowing the defendants and the intervenors to read in evidence, over objections of plaintiffs and heirs of Alley, the execution for costs as issued by the clerk of the District Court of McLennan County; because there was no judgment for any money whatever, or for costs of suit; nor did said judgment or decree in said cause support or authorize the issuance of said executions, or either of them. Criswell v. Ragsdale, 18 Texas, 444; Wright v. Doherty, 50 Texas, 42.

*Gillette & Murrell* and *D. H. Hewlett*, for appellees.—1. The District Court of McLennan County had jurisdiction of the subject matter of

Outler's suit to establish, under his contract with Joseph Wilson, his title to the land.    Bosque County was not created until the Act of February, 1856.    Until then it was part of McLennan County.    Sayles' Civ. Stats., art. 725.

2.    The jurisdiction of the District Court of McLennan County over the persons of the unknown heirs of Joseph Wilson in Outler's suit against them, in view of the record herein shown, will be presumed to have been properly acquired; and being so, its judgment is not subject to collateral attack.

3.    The judgment of the District Court of McLennan County having established Outler's title to one-half the land in controversy, the plaintiffs claiming through Joseph Wilson or his heirs can not recover such one-half.

FISHER, JUDGE, *Section B.*—This suit is for partition of the Joseph L. Wilson 640 acres survey of land, brought by appellants against the unknown heirs of F. H. Alley, and against appellees J. R. Beaty and A. W. Barfort, February 9, 1889.    Thomas Jones and Mary Taylor and her husband C. W. Taylor intervened, and disclaimed as to certain lands described in the petition, and set up title to the remainder.    Beaty set up exclusive title to 120 acres by metes and bounds, and Barfort to 220 acres out of the south half of the survey, and both disclaimed title to remainder of the survey.    Both pleaded the statutes of three, five, and ten years limitation, and improvements in good faith.    As to pleas of limitation, plaintiffs pleaded coverture, and not guilty to plea of intervention.    The unknown heirs of Alley by their guardian ad litem answer, and adopt the allegations of plaintiffs' petition.

Judgment below was rendered against appellants and the unknown heirs of Alley in favor of the defendants, and also in favor of intervenors for 320 acres of the north half of the survey, and removing plaintiffs' claim as a cloud in the intervenors' and defendants' title, and vesting the title to the land in defendants and the intervenors.

The plaintiffs and the unknown heirs of Alley assert title to the land as the heirs of Joseph Wilson.

The defendants and the intervenors assert and claim title to the land under a judgment rendered in favor of G. W. Outler, against the heirs of Joseph Wilson, in the District Court of McLennan County, Texas, June 5, 1856, divesting the heirs of Wilson of an undivided half-interest in the lands, and vesting title thereto in Outler; and also under an execution sale of the interest of the heirs in the land that was sold under an execution for costs incurred in the case of Outler v. Heirs of Joseph Wilson.    Outler was the purchaser of the undivided half-interest of the Wilson heirs in the land at this execution sale.    The defendants and intervenors claim under Outler.

The court below instructed the jury as follows: "That if they believed that the plaintiffs are entitled to inherit the estate of Andrew J. Wilson or Joseph Wilson, then they are instructed, that the patent deeds and judgment executions and return thereon read in evidence are sufficient to entitle the defendants and the intervenors to recover against the plaintiffs and the unknown heirs of F. H. Alley," and instructed them to so find.

On the trial below appellants objected to the introduction in evidence by the intervenors and defendants of the judgment rendered in the case of Outler v. Heirs of Joseph Wilson, and to the execution and return and sheriff's deed executed to Outler, for the reasons:

1. Because it affirmatively appears from the said record in cause No. 127, that the District Court of McLennan County had no jurisdiction to enter said judgment, for the reason, that it appears that the foundation of said suit No. 127 was for specific performance of contract, and not a proceeding in rem.

2. Because there was no affidavit made, as shown by said record, to authorize the issuance of citation for publication, as attempted in said cause.

3. Because it appears that the defendants in cause No. 127 were attempted to be cited by publication, as unknown nonresident heirs of Joseph Wilson, deceased.

4. Because the said writ of citation for publication was defective, in that it did not give the proper names of the parties to the suit, and because it did not give a brief statement of the cause of action, as required by law, and because said unknown heirs, defendants in cause No. 127, were cited to answer the petition of J. W. Outler, instead of G. W. Outler, who appears to be the judgment creditor in said judgment.

5. Because the District Court of McLennan County did not have jurisdiction to render a judgment to enforce a specific performance of a contract to convey land against the minor heirs of a decedent.

6. Because the execution under which the land was sold and the sheriff's deed conveying the land were void; because the judgment under which said execution was issued did not support or authorize the issuance of execution; and because the sale of the land under the writ of execution was made after the return day of the writ, therefore the sale is void.

The court overruled these objections and admitted the instruments in evidence.

Giving the charge quoted and admitting these instruments in evidence are assigned errors. This presents the principal question involved in the case.

In order to ascertain the merits of these assignments, it becomes necessary to look into the proceeding had in the case of Outler v. Heirs of Joseph Wilson. J. W. Outler filed his petition in the Dis-

trict Court of McLennan County on the 13th day of March, 1854, wherein he alleged, "that Joseph L. Wilson fell at Goliad in 1836, and was thereby entitled to 4036 acres of land, and that his heir Joseph Wilson, then a citizen of Alabama, in 1850 entered into a contract with petitioner to go to Texas and procure the lands for said Joseph Wilson, and by the terms of the agreement, for and in consideration of the services to be rendered by petitioner in procuring the lands, etc., he was to have one-half of the lands, which were to be conveyed to him by Joseph Wilson; that he came to Texas, and by his efforts procured patents for said lands and located the same; that before he returned to Alabama, and after he had procured the lands, the said Joseph Wilson died, thereby rendering it impossible to execute him a title."

The petition asks for judgment against the heirs of Joseph Wilson for one-half of the lands, and that title thereto be decreed in him. The petition describes the survey in controversy as one of the tracts of land that the plaintiff Outler sought to recover a half-interest in.

June 5, 1856, judgment was rendered in favor of Outler against the heirs of Joseph Wilson, deceased, for one-half of the lands. The judgment does not partition the lands.

The evidence in the record before us shows with reasonable certainty that the appellants are the surviving heirs of Joseph Wilson, and that at the time the petition in the case of Outler v. Heirs of Wilson was filed, and at the time the judgment was rendered in that case, the heirs of Wilson were nonresidents of this State, and that at such time Andrew J. Wilson, one of the heirs, was a minor.

The following paper is a part of the record in the case of Outler v. Heirs of Wilson:

"*The State of Texas, County of McLennan.*—This day personally came and appeared before A. J. Evans, clerk of the District Court of said county, and says the names of the heirs of Joseph Wilson, deceased, are unknown to affiant.                    "A. J. EVANS.

"J. R. HARRIS, D. C. McL. Co., T."

It is contended by appellants, that this paper purports to be the only affidavit made in the case as a basis for the citation by publication; and that as an affidavit it is insufficient, because it does not appear to be sworn to by any one or before any officer; and that it is so vague and indefinite as to render it meaningless.

We are of opinion that this paper can not be regarded as an affidavit sufficient in law for any purpose. It is not sworn to by any one or before any officer. But placing this construction upon this paper does not determine that the court did not have jurisdiction to render the judgment. The judgment in the case of Outler v. Heirs of Wilson was rendered in a domestic court of general jurisdiction. In such case every

presumption will be indulged in favor of the jurisdiction of the court and the validity of the judgment; and where it does not otherwise appear, it will be presumed that the court ascertained all facts necessary to the exercise of its jurisdiction. Treadway v. Eastburn, 57 Texas, 211.

In cases of this kind, in order for a collateral attack upon the jurisdiction of the court and the validity of the judgment to prevail, it must affirmatively appear that the facts essential to jurisdiction did not in in fact exist. If we discard this paper found in the record as an insufficient affidavit, or hold it to be,. as we do, no affidavit at all, the judgment must nevertheless stand when collaterally questioned, because the law presumes that a proper affidavit was made, and such presumption will exist until the contrary is affirmatively shown by something contained in the record.

In construing the effect of judgments rendered upon constructive service by publication, this court, in the case of Stewart v. Anderson, 70 Texas, 590, held, that the same conclusive effect is given to such judgments as those rendered upon personal service; that a like presumption will obtain in the one case as in the other.

We do not intend to hold, that an affidavit as a basis for citation by publication is essential or necessary in order for the jurisdiction of the court to attach. We leave that question open, as unnecessary to be decided. What we do hold is, that as it was not shown that an affidavit was not in fact made, the law will presume that one was made. We do not believe that the citation for publication is subject to the objections urged against it. It states, that J. W. Outler has filed his petition praying that he may have certain lands decreed to him which were granted by the State of Texas to the heirs of Joseph L. Wilson, deceased, and that Joseph Wilson agreed to convey to him a certain portion of the lands for having located same; that Joseph Wilson is dead, and his heirs are unknown. This citation was published for the time required by law. While the citation may not be as full as the law requires, it is sufficient when collaterally questioned. The apparent discrepancy in the name G. W. and J. W. Outler is removed by an examination of the record in the case. It appears that J. W. and G. W. Outler is the same person.

We next come to the question whether the court had jurisdiction to render the judgment in the case of Outler v. Heirs of Joseph Wilson, by reason of the fact that one of the heirs was a minor at the time. The case of Messner v. Giddings, 65 Texas, 301, is relied upon by appellants as authority against the jurisdiction of the court. The remedy pursued by Outler against the heirs of Wilson is in no manner like that undertaken in the case of Messner v. Giddings. In the former case, the remedy is one by Outler to recover from the heirs of Wilson lands that he had acquired by virtue of a title from their ancestor. The District Court was the forum for this purpose. In the latter case, it was

a proceeding had in the District Court, seeking to permit the mother of the minor children to have the title of such minors in real estate divested, and vested in another in pursuance of a contract that she had made but had no power to carry out. There, it was rightfully held that the District Court had no jurisdiction. The two cases are widely apart.

Regarding the unknown heirs of Wilson as nonresidents of the State when the judgment was rendered in favor of Outler against them, we come to the question, whether the court had cognizance of the subject matter of the suit and had jurisdiction to render the judgment. It is contended by appellant, that the remedy pursued and the judgment rendered were in personam and not in rem. The law in force at the time the case of Outler v. Heirs of Wilson was instituted and judgment rendered permitted the plaintiff to sue in trespass to try title for land, and authorized the issuance of a writ of possession to place him in possession when recovered. In this respect the law was the same then as it is now. The law then, as now, permitted the action to be maintained upon an equitable as well as the legal title.

These provisions of the statutes are so well known that we deem it unnecessary to quote them. They show the purpose of the law to be to provide, by the remedy of trespass to try title, a method of vesting and divesting the title to real estate in all cases where the right or title or interest and possession of land may be involved. The remedy was evidently designedly intended as broad enough and effective in its scope to embrace all character of litigation that affected the title to real estate. This being the purpose of the law, we think the remedy pursued by Outler was an adjudication of the title between him and the heirs of Wilson, and fell within the provisions of the law that authorized the action of trespass to try title.

This being true, it is next to be considered whether such an action is one in rem. Our opinion upon this question can not be more satisfactorily expressed than by what is said by the Supreme Court of the United States in the case of Arndt v. Griggs, 10 Sup. Ct. Rep., 558. (Same Case, 134 U. S., 316):

"The propositions are, that an action to quiet title is a suit in equity; that equity acts upon the person, and that the person is not brought into court by service of publication alone. While these propositions are doubtless correct as statements of general rules respecting bills to quiet title and proceedings in courts of equity, they are not applicable or controlling here. The question is not what a court of equity by virtue of its general powers and in the absence of a statute might do, but it is, What jurisdiction has a State over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts to determine the validity and extent of the claims of nonresidents to such real estate? If a State has no power to bring a nonresident into

its courts for any purpose by publication, it is impotent to perfect the titles of real estate within its limits held by its own citizens; and a cloud cast upon such title by a claim of a nonresident will remain for all time a cloud, unless such nonresident shall voluntarily come into its courts for the purpose of having it adjudicated.   But no such imperfections attend the sovereignty of the State.   It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjective to its rules concerning the holding, the transfer, liability to obligations private or public, and the modes of establishing titles thereto.   It can not bring the person of a nonresident within its limits—its process goes not out beyond its borders—but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice.   The well being of every community requires that the title to real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it.   The duty of accomplishing this is local in nature.   *  *  *   It remains with the State, and as this duty is one of the State the manner of discharging it must be determined by the State, and no proceeding which it provides can be declared invalid unless in conflict with some special inhibitions of the Constitution or against natural justice.   *  *  *   The power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted.   It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated.''

Entertaining these views, we hold that the remedy was in rem, and that the court had jurisdiction to render the judgment so far as it affected the title to the lands.

We are of opinion, that the court below should have sustained the objections to the admission in evidence of the execution and sheriff's deed thereunder conveying to Outler one-half of the lands.

The execution was for the costs of suit incurred in the case of Outler v. Heirs of Wilson.   The heirs at the time being nonresidents of this State, the court only had power to render judgment against them in so far as affecting the title to the lands, but had no jurisdiction to render judgment for costs or any other judgment that partook of the character in personam.   The judgment did not support an execution, hence it was void, and the sheriff's deed did not pass any title.   Foote v. Sewall, 81 Texas, 660; Taliaferro v. Butler, 77 Texas, 580; Freeman v. Alderson, 119 U. S., 190.

This view of the question renders it unnecessary to pass upon other objections urged to the execution sale.

For the error of the court in admitting the execution and sheriff's deed in evidence, and the charge of the court in respect thereto, we reverse and remand the case.

*Reversed and remanded.*

Adopted May 10, 1892.