BROWN v. CHARLES et al.

(Circuit Court, W. D. Virginia. October 27, 1897.)

1. EX PARTE ADJUDICATION—COLLATERAL ATTACK—STATUTE.
   Under Code Va. (Ed. 1860) c. 112, § 41, providing that certain settlers upon lands may, upon proof of specified facts, procure an ex parte order of the county court directing the plat and certificate of survey to be recorded, and that said record shall be conclusive evidence as against a person claiming under a subsequent "location," such an order cannot be collaterally attacked in an action at law.

2. SETTLER ON LANDS—BONA FIDES.
   The object of the statute was to secure the land to bona fide settlers, and is not operative in favor of a settlement effected merely through agents or tenants.

3. "LOCATION" OF LANDS—EFFECT OF INITIAL STEPS.
   Under Code Va. (Ed. 1860) c. 112, a "location" of land becomes operative as soon as a person holding a land warrant lodges it with the surveyor of the county and makes in the surveyor's book an entry designating the boundaries.

Action of Ejectment. All of the evidence in this case having been introduced, counsel for the plaintiff and counsel for the defendants moved the court to give certain instructions, respectively, to the jury.

Henry & Graham and May & May, for plaintiff.

John C. Summers, C. F. Trigg, and W. E. Burns, for defendants.

PAUL, District Judge. There are several important questions arising in this case which the court will dispose of preliminarily to the instructions proper to be given to the jury. They arise out of the construction to be given section 41, c. 112, Code Va. (Ed. 1860), which is as follows:

"Sec. 41. No location of any land office warrant upon any land which shall have been settled continuously for ten years previously, upon which taxes shall have been paid at any time within the said ten years by the person having settled the same, or any person claiming under him, shall be valid; and any title which the commonwealth may have to such land shall be hereby relinquished to the person in possession of the said land, claiming the same under such settlement and payment; and every person so in possession, so claiming, may have such land surveyed, and before the court of the county where such land or any part thereof may lie, prove such settlement for such time and such payment; whereupon such court shall order the plat and certificate of such survey to be recorded; and thereafter the said record shall be conclusive evidence in any controversy between the claimant thereunder and any person claiming under a location of the said land made after such order."

At the December term, 1873, of the county court of Buchanan county, the following order was entered in accordance with the provisions of the section just quoted:

"This day Jonathan Hurley proved before the court that he is in possession of a tract of land containing 2,000 acres, described as lying in Buchanan county, Va., on the waters and slopes of the Race Fork and Pawpaw Fork of Knox creek; that he has settled the same continuously for 10 years previous to this time; and that the said Jonathan Hurley has paid taxes on said 2,000 acres of land within said 10 years. And the said Jonathan Hurley having had said 2,000 acres of land surveyed by Jacob Baldwin, the deputy surveyor for William H. Booth, the surveyor of Buchanan county, and the said surveyor having returned here to the court a fair plat and certificate of said survey of 2,000 acres, it is therefore ordered by the court that the plat and certificate be recorded, in order that the commonwealth relinquish her right to said 2,000 acres of land, under chapter 112, § 41, of the Code of Virginia (Ed. 1860), and that the same may be vested in the said Jonathan Hurley."

It is contended by counsel for the plaintiff that the acts necessary to be done by the claimant in order to obtain this order from the court can be inquired into in this trial in a court of law. It is insisted that the possession of the land for 10 years previous to the order, that taxes had been paid thereon, and all other preliminary facts, can be investigated, and, if found to be untrue as recited in the order of the court, then the said order is to be held null and void. Counsel for the defendants insist that the order is by the statute itself made conclusive evidence of the facts recited and necessary to give the court jurisdiction, that the court is one of competent jurisdiction, that it had jurisdiction when it entered the order of the subject-matter and of the parties, and that the integrity of the order cannot be assailed in this action.

This question has not been directly and distinctly passed upon by the court of appeals of Virginia. Counsel for the plaintiff insist that it was decided by the court of appeals of Virginia in Slocum v. Compton, 93 Va. 374, 25 S. E. 3. But the question was not presented in that case, either in the court below or in the appellate court, in the direct and positive shape in which it is presented for the consideration of this court. It is claimed by counsel for the plaintiff that the order of the county court can be collaterally attacked under the doctrine laid down in Pulaski Co. v. Stuart, 28 Grat. 872. In that case the court held:

"Where a court of general jurisdiction acts within the scope of its general powers, its judgment will be presumed to be in accordance with its jurisdiction, and cannot be collaterally impeached."

It further held that:

"Where a court of general jurisdiction has conferred upon it special powers by a special statute, and such special powers are exercised judicially, its judgment cannot be collaterally impeached, but that in such case, where it acted ministerially, and not judicially, the facts essential to the exercise of the special jurisdiction must appear on the face of the record."

If the statute under which the proceedings were had in the county court of Buchanan were a special statute, the facts necessary to give the court jurisdiction sufficiently appear in the order itself. But the statute is not a special, but a general, statute,—as general as any other provision in the Code whereby a person is enabled to acquire title to lands held by the commonwealth. It is one of the modes prescribed by the commonwealth for parting with title to her lands, and title acquired by this proceeding is as valid and binding upon all subsequent claimants of the land, except prior locators, as if the land had passed by the commonwealth's grant. The statute makes it conclusive. But, independent of this provision of the statute, the authorities abundantly establish the doctrine that it cannot be collaterally attacked. In Hardy v. Beaty (Tex. Sup.) 31 Am. St. Rep. 80 (s. c. 19 S. W. 778), the court said:

"In a collateral attack upon a domestic judgment of a court of general jurisdiction, every presumption will be indulged in favor of the jurisdiction of the court and the validity of the judgment; and, when it does not otherwise appear, it will be presumed that the court ascertained all the facts necessary to the exercise of its jurisdiction. In order for such attack to prevail, it must affirmatively appear that the facts essential to the jurisdiction of the court did not in fact exist."

In the notes to that decision are a number of citations, among them the following:

"A judgment of a court of competent jurisdiction cannot be collaterally impeached unless the record shows affirmatively want of jurisdiction." Williams v. Haynes (Tex. Sup.) 13 S. W. 1029.

"A domestic judgment of the court of general jurisdiction, upon a subject-matter within the scope of its power, is so conclusive that evidence aliunde cannot be received to contradict it." Wilkerson v. Schoonmaker (Tex. Sup.) 14 S. W. 223.

"When the power to ascertain the jurisdictional fact is conferred on the court, and it adjudges jurisdiction in itself, it may not be overcome on collateral attack." Goodwin v. Sims (Ala.) 5 South. 587.

In Johnson v. Towsley, 13 Wall. 72, Justice Miller thus states the doctrine:

"* * * When the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its duties, is conclusive upon all others. That the action of the land office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated, and in all courts, and in all forms of judicial proceedings, where this title must control, either by reason of the limited powers of the court, or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained."

The proceedings necessary to obtain a patent to lands belonging to the United States are analogous to the proceedings had in the county court, in this: that they are ex parte in their nature. The supreme court has held in numerous cases that the regularity of the proceed-

ings cannot be collaterally attacked in a court of law.    In the case of French v. Fyan, 93 U. S. 169, this court, speaking through Mr. Justice Miller, said:

"We are of opinion that, in this action at law, it would be a departure from sound principle, and contrary to well-considered judgments in this court and in others of high authority, to permit the validity of the patent to the state to be subjected to the test of the verdict of a jury on such oral testimony as might be brought before it.    It would be substituting the jury, or the court sitting as a jury, for the tribunal which congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey."

In Smelting Co. v. Kemp, 104 U. S. 636, the court said:

"It is this unassailable character [of the patent] which gives to it its chief—indeed, its only—value as a means of quieting its possessor in the enjoyment of the lands it embraces.    If intruders upon them could compel him, in every suit for possession, to establish the validity of the action of the land department and the correctness of its ruling upon matters submitted to it, the patent, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation.    He would recover one portion of his land if the jury were satisfied that the evidence produced justified the action of that department, and lose another portion, the title whereto rests upon the same facts, because another jury came to a different conclusion.    So his rights in different suits upon the same patent would be determined, not by its efficacy as a conveyance of the government, but according to the fluctuating prejudices of different jurymen, or their varying capacities to weigh evidence."

The language is applicable to the present inquiry.    The order of the county court of Buchanan must be taken as conclusive in this case. But this conclusive character of the order does not extend to any person claiming under a location of the land made prior to such order. This gives rise to the very important question:    What constitutes a location of land under chapter 112, Code Va. (Ed. 1860)?    Section 4 of that chapter provides:

"Sec. 4. When any person shall lodge in the land office a certificate of the payment into the treasury, in the mode prescribed by the first section of chapter forty-one, of the purchase money of waste and unappropriated land in this state (not being a common under chapter sixty-two), or an executive certificate of the allowance of bounty land for military service to this state or the United States, the register of the land office shall issue, under his hand and official seal, to the person making such payment or entitled to such certificate, or to his heirs or assigns, a printed warrant specifying the quantity of land and the right in which it is due, and authorizing a surveyor to lay off and survey the same."

Section 6 of the same chapter provides:

"Sec. 6. Any holder of a land warrant, other than the principal surveyor of the county in which it is desired to locate it, may lodge it with such surveyor, who shall, if required, give a receipt therefor.    Such holder shall make his location so special and precise that others may be able with certainty to locate their warrants on the adjacent lands."

Section 7 provides:

"Sec. 7. Every location shall bear date the day on which it is made, and shall be entered by the surveyor in a book to be kept for that purpose wherein there shall be no blank leaves or spaces between the entries.    No entry shall be made in any case without a warrant."

Section 8 provides:

"Sec. 8. Locations shall be made in the order in which the warrants are presented, but they shall have priority according to the dates of their war-

rants. If two or more such warrants be dated on the same day, the surveyor shall determine the right to priority between them by lot."

Section 10 provides:

"Sec. 10. When a partial appropriation of a warrant has been made, the officer making the entry shall certify on the back of the warrant how much of it remains unappropriated, and if the owner of such warrant wishes to locate any portion thereof in any other county than that in which the first location was made, the surveyor in whose office the warrant is filed shall deliver it to the owner with such certificate on it; and whenever the whole of any warrant has been appropriated it shall be returned, with the survey, or the last survey made by virtue thereof."

Section 11 provides:

"Sec. 11. Any holder of a land warrant desiring to locate it in a county in which there is no surveyor, may lodge it with the clerk of the county court of such county, who shall make an entry of such location in the entry book of his county. A survey of such entry by a surveyor of an adjoining county shall enable the holder to obtain a grant thereon." ·

Section 12 provides:

"Sec. 12. If any principal surveyor is the holder of a land warrant which he desires to locate in his own county, he may lodge it with the clerk of the court of the county, who shall make an entry of such location and return the same to his next court there to be recorded. Within six months after such entry, the said surveyor shall have the survey made by one of his deputies, or, if he have none, by a surveyor or deputy surveyor of an adjoining county, otherwise the entry shall be void."

The foregoing provisions of the Code clearly establish the contention of counsel for the plaintiff that the location is made when a party holding a land warrant lodges it with the surveyor of the county in which he wishes to locate his land, and makes an entry in the surveyor's book designating the boundaries of the land which he wishes surveyed. The survey and grant are not necessary, as contended by counsel for the defendants, to effect the location.

On the 23d of June, 1873, five months before the order was made in the county court of Buchanan county establishing the court right under which the defendants claim title to the land in controversy, Charles A. Lohnert, one of the parties in the patent under which the plaintiff claims, made the following entry with the surveyor of Buchanan county:

"June 23rd, 1873. Entered for Charles A. Lohnert, by virtue of land office treasury warrants Nos. 30,040, 30,041, and 30,042, issued to Charles A. Lohnert and T. W. Adams in the year 1865, 2.500 acres lying in Buchanan county, Va., beginning near the mouth of Pawpaw creek near the line of Jonathan Hurley; thence up Knox creek to opposite the mouth of Guess Fork; thence running up the ridge between Race Fork and Lester's Fork to the top of the ridge between Louisa river and Knox creek; thence to the lines of Shaderick Estop lands on Pawpaw; thence down the east side of said creek to the beginning,—including all vacant land and excluding all patented land and older entries in said boundary.                                     Wm. H. Booth, S. B. C.
"A true copy.  Sept. 21st, 1893.
      "Teste:  Jacob Baldwin, S. B. C."

It is shown by the plats and surveys introduced in evidence that the land claimed by Jonathan Hurley in the court-right proceedings is within the boundary lines designated in the patent under which the plaintiff claims; and, the lands for which the patent issued having been located before the court-right proceedings were had, the patent

is not affected thereby.   The plaintiff stands, in his relation to the land in controversy, in the same position he would have occupied if the court-right order had not been entered.

Another question presented for determination by the court is the construction of the word "settled."   The plaintiff insists that the person who claims land by virtue of his having settled on it, and held possession thereof for 10 years, and paid taxes thereon during that time, must be an actual settler,—the person himself in possession of the land during the time his possession is ripening into a title.   On the other hand, counsel for the defendants claim that he can make such settlement by his agents or tenants.   The court cannot concur in the latter view.   It thinks the object of the statute was to secure to bona fide settlers the lands which they had held in possession, and probably cleared out and improved, during the time prescribed by the statute,— to secure the settlers in their homes, and thereby encourage the settlement of her public lands.   It was not contemplated by the statute that the public domain should be thrown open to such speculative purposes as would follow were a man permitted, even without going upon any of the lands himself, to select as many tracts of land as he may choose, and, by putting an agent or tenant on each, by such settlement and the payment of taxes at some time in 10 years, acquire title to the whole.   The claim that a man can hold lands by his agents or tenants is undisputed in a controversy arising out of the adversary possession of lands, but it is not applicable to the acquisition of title by settlement.

The court will instruct the jury in accordance with the foregoing views.