## McDONALD v. MABEE.

(Court of Civil Appeals of Texas. March 9, 1911. Rehearing Denied April 6, 1911.)

JUDGMENT (§ 17*) — JURISDICTION — PROCESS —PUBLICATION.

There is no jurisdiction to render a personal judgment against one absent from the state after service of notice by publication, though the defendant is a citizen of the state.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33; Dec. Dig. § 17.*]

Hodges, J., dissenting.

Appeal from Lamar County Court; Leslie L. Hardison, Judge.

Action by Henry D. McDonald against F. A. Mabee. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Appellant, by his petition filed on the 5th of June, 1909, sought a recovery against appellee on a promissory note alleged to have been executed by appellee and one D. P. Hollon on March 6, 1891, for the sum of $300, with interest and attorney's fees, if collected by law. Hollon was alleged to be wholly insolvent, and was not made a party to the suit. Appellant sued out an attachment and had the same levied on certain real estate as the property of appellee. Appellee appeared and by his answer pleaded, as material to this appeal, that on October 3, 1893, the appellant obtained judgment against him and Hollon in cause No. 5468 in the district court of Lamar county, Tex., on the note sued on, and with foreclosure of a vendor's lien on certain land for the purchase of which said note was given, and that said judgment was not appealed from and was final, and by reason of which the cause of action asserted by appellant became merged into the judgment and was a complete bar to appellant's suit. Appellant, replying to that part of the answer setting up a former judgment, alleged that at the time of the institution of the suit in the district court appellee was a nonresident of the state of Texas; that, erroneously supposing him to be a resident of Lamar county, Tex., he caused citation to issue to said county, which was not served on appellee, but the return of the officer showed him to be absent from the state of Texas, whereupon appellant made an affidavit in said cause that the appellee was absent from the state of Texas,

---

and praying that he be cited by publication, which citation was issued and published as required by law, and that the judgment rendered in said cause against appellee was based on citation by publication, and so recites on its face; wherefore the judgment rendered thereon was not a valid judgment against appellee, except so far as it foreclosed the vendor's lien on the land within the jurisdiction of the court, and would not support an execution against the property of appellee generally.

The case was tried before the court without a jury, and the court found as a fact that appellee, in cause No. 5468 in the district court of Lamar county, Tex., was cited by publication issued on application and affidavit stating that he was absent from the state, and that appellee was given no other notice of the suit and did not enter his appearance therein, and that the judgment against appellee was, as disclosed on its face, based solely upon the citation by publication. The court further found: "I find that F. A. Mabee, at the time he joined in the execution of the note sued on, resided in Paris, Lamar county, Tex., and so resided up to the month of April, 1892, when he left Lamar county, Tex., to establish a home at some other place; but I find that Mabee's family continued to reside in Lamar county, Tex., until the spring of 1894, when they left, and have since had their home in St. Louis, Mo. I find that F. A. Mabee in the month of April, 1892, left Paris and the state of Texas, and remained away until November, 1892, when he returned to Paris and remained in Paris during the said month of November, when he left again and went to St. Louis, Mo., where he remained from January 1, 1893, to January 1, 1894, though his family still resided in Paris, Tex., from which place they removed to St. Louis in the spring of 1894. I find that from January 1, 1893, to January 1, 1894, defendant F. A. Mabee was absent from the state of Texas, but that his family resided in Paris, Tex., during that time and that he claimed Paris, Tex., as his residence, and that since the spring of 1894 he and his family have resided in St. Louis, Mo."

Moore & Park, for appellant. Lightfoot, Long & Wortham, for appellee.

LEVY, J. (after stating the facts as above). Under proper assignment the appellant challenges the ruling of the court, and contends that the judgment in issue, as far as it operated in personam, was under the facts void for the want of jurisdiction in the court to render such character of judgment. The question presented is to be considered under the conclusive facts that the defendant in the said judgment, though a citizen of Texas and claiming Texas as his residence, was at the time of the suit and publication of the citation and rendition of judgment absent from the state of Texas and in St. Louis, Mo. He was in St. Louis, Mo., from December, 1892,

to January 1, 1894. The purpose of his leaving and absence from the state of Texas at the time was, as found by the court, "to establish a home in some other place," and he and his family in the spring of 1894 did remove to St. Louis, Mo., and have since resided there. It was shown that the suit in question was filed on November 30, 1892, to recover the amount of the note and to foreclose a lien on real estate in this state. Personal citation was issued to appellee on December 29, 1892, returnable to the April term of court, 1893. This citation was returned by the sheriff on December 30, 1892, not executed as to appellee, and with the indorsement, "Learned to be out of the state of Texas." Citation by publication, under the statute of this state, then issued on February 20, 1893, and was duly published four weeks, ending March, 1893. Judgment was finally rendered on October 3, 1893, against appellee personally for the amount of the note and execution awarded generally, as well as for foreclosure of the lien and sale of the land. The judgment on its face recited that it was rendered upon citation by publication based on the defendant's being absent from the state of Texas. The defendant in the suit had no notice of the suit, and did not appear.

To make the appeal clear, it is admitted by appellant that the former judgment of the district court in issue was valid to the extent that it foreclosed a lien on the property as a proceeding in rem. It is contended by him that it is invalid as far as it was made a personal judgment, as it was, against appellee for any balance of the original obligation remaining unpaid after exhausting the property on which the foreclosure was had. Appellee at the time of the instant suit was a citizen and resident of Missouri, but appeared and answered and defended the suit. Therefore, without question, appellant had the right to sue and have judgment rendered in his favor in the instant suit for the balance due on the original note, interest, attorney's fees, and costs of court, with foreclosure of his attachment lien, if the former judgment in personam was a nullity for want of jurisdiction. If the former judgment was a valid judgment in personam, then it operated as a merger of the original cause of action, and was a bar to the original suit. The trial court concluded as a matter of law that it was a valid judgment in personam. The facts positively appearing, as they do, upon the record, any presumption of fact that would be required to be indulged in a collateral attack upon a judgment here ceased, and the question presented becomes one of law.

The celebrated case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, has been uniformly regarded as placing beyond question the doctrine that a personal judgment against a nonresident, who was not served within the state and who did not appear or assent to the mode of constructive service, is in-

valid, even in the state where rendered. In deference to the decision, the later decisions in this state have so followed the doctrine, and thus overturned earlier decisions of the state. Stewart v. Anderson, 70 Tex. 588, 8 S. W. 295; York v. State, 73 Tex. 651, 11 S. W. 869; Hardy v. Beaty, 84 Tex. 562, 19 S. W. 778. 31 Am. St. Rep. 80; Maddox v. Craig, 80 Tex. 600, 16 S. W. 328; Railway Co. v. Gay, 86 Tex. 586, 26 S. W.. 603, .25 L. R. A. 52. In that case the United States Supreme Court held that the established principle of law there discussed forbids personal judgments against a nonresident upon constructive service only, and that such principle is so far fundamental that a judgment rendered in violation thereof, though authorized by a state statute, violates the requirement of the Constitution as to due process of law. The fundamental principle so declared and applied in the case was, as stated in the opinion at the outset: "The authority of every tribunal is necessarily restricted by the territorial limits of the state in which it is established. Any attempt to exercise authority beyond those limits would be deemed in every other forum, as has been said by this court, an illegitimate assumption of power, and be resisted as a mere abuse." The court stated the rules to be: (1) "That every state possesses exclusive jurisdiction and sovereignty over persons and property within its territory," and (2) "the other principle of law referred to follows from the one mentioned; that is, that no state can exercise direct jurisdiction and authority over persons or property without its territory." And the court remarked, "These views are not new. They have been frequently expressed, with more or less distinctness, in opinions of eminent judges, and have been carried into adjudications in numerous cases," and then quotes for illustration from decision of Mr. Justice Story. As the leading authority for this principle, this case has been numerously applied by the citing cases. Sustaining and declaring the same principle are: Freeman v. Alderson, 119 U. S. 165, 7 Sup. Ct. 165, 30 L. Ed. 372; Wilson v. Seligman, 144 U. S. 41, 12 Sup. Ct. 541, 36 L. Ed. 338; Ellenwood v. Chair Co., 158 U. S. 105, 15 Sup. Ct. 771, 39 L. Ed. 913; Dull v. Blackman, 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733. See, also, Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; Ableman v. Booth, 21 How. 506, 16 L. Ed. 169.

Is the principle of the Pennoyer Case applicable and ruling the instant case? Neff, the party defendant in the judgment, it is true, was a nonresident of Oregon and a citizen and resident of California, and in that particular fact the instant case differs. But the two cases are identical in the fact of the absence of the defendant from the state at the time of publication. And it was to the fact of being beyond the reach of the process, and not to the status of citizenship, a majority of this court think that the court in that case was applying as governing the principle that a court has no power to extend its process beyond the limits of the state, and the laws of one state have no operation outside of its own territory. The court was determining whether or not there had been in fact any legal service upon the defendant, as essential to the jurisdiction of the court over the person of the defendant and the validity of the judgment. It is a cardinal principle that an opportunity be given for a day in court to the defendant by legal service. It is the fact appearing of service that gives the court jurisdiction in personal judgments. So if it be conceded, as it must, that constructive notice has no extraterritorial force, and such notice only is, as here, relied on to sustain a personal judgment against a defendant who was not in fact within the state, then it would affirmatively appear in the record in legal effect a want of any service upon the defendant. To say otherwise would be to reverse the rule of law and state that the published notice had legal force outside the limits of the state, and to charge the defendant with notice. In such event the defendant out of the state would be held to know the fact of notice in the face of the law declaring such notice ineffectual and void, and not existent or potent as a legal fact. It would be an inconsistent rule that makes valid the same act and procedure that is deemed at the same time ineffectual and void and without the power of the court. And to predicate the test of jurisdiction of the court here to render personal judgment on constructive notice only, upon the fact of being beyond the territorial limits and bounds of the court's process, rather than the mere fact of being in the relation of citizen towards the state where the court's process issues, makes the principle involved, we think, reasonable. To grant jurisdiction because of the bare fact of being in the relation of citizen to the particular state predicates the authority of the court to enter the personal judgment on such notice upon the ground, either that citizenship as a political status makes, as a conclusive matter of law, the particular citizen constructively present within the territorial limits of the court's process, though in fact absent, or it gives extraterritorial force to the court's process when he is absent from the state. It would be fallacious reasoning, it is believed, to so argue that upon that ground the defendant has had his day in court by due process of law. The Supreme Court of this state, in Railway Co. v. Gay, supra, 86 Tex. 586, 26 S. W. 603 (25 L. R. A. 52), in speaking to the principle that no judicial process can have lawful authority outside of the jurisdiction of the court issued, says: "Whether want of jurisdiction arises from the fact that the thing to be affected by judgment and process of a court is without its territorial jurisdiction or with-

out its jurisdiction for any other reason is unimportant, for in either case the process is invalid, because the court has not jurisdiction." The following cases apply the rule as to citizens who are absent from the state: De la Montanya v. De la Montanya, 112 Cal. 101, 44 Pac. 345, 32 L. R. A. 82, 53 Am. St. Rep. 165; Smith v. Grady, 68 Wis. 215, 31 N. W. 477. In Bickerdike v. Allen, 157 Ill. 95, 41 N. E. 740, 29 L. R. A. 782, it was held that mere publication would not, as against a citizen gone out of the state, be sufficient, but that the publication supplemented by mailing to him a notice was sufficient. There is involved, we think, a federal question.

Under the facts of this case, and in conformity with the principle of law discussed, a majority of this court are of the opinion that the trial court erred in holding that the judgment in issue was a valid personal judgment; and it is ordered that the judgment of the court be reversed and here rendered for appellant, with costs of appeal against the appellee.

HODGES, J. (dissenting). I am not prepared to concur in the views expressed or the disposition made of this case by my Associates; and for the purpose of making my position understood I shall restate the case in part.

As stated by Justice LEVY, the suit is one instituted in the county court of Lamar county by H. D. McDonald against F. A. Mabee, to recover a sum of money alleged to be due on a promissory note executed by Mabee and others in 1891. It is alleged that Mabee is a nonresident, but is temporarily within the state of Texas. Among other defenses interposed by the defendant, Mabee, he pleaded in bar a former judgment recovered in October, 1893, by the plaintiff, McDonald, against him and other parties in the district court of Lamar county, Tex., in cause No. 5468, for the sum of $431.97; that said judgment was rendered in a suit on the same note upon which this suit is based, and claims that the debt evidenced by that note was merged in that judgment, and for that reason that this suit should not be maintained. By supplemental petition the plaintiff (appellant here) replied, setting up substantially the following facts: "That at the time the aforesaid suit was instituted the defendant Mabee was actually a nonresident of the state of Texas, but, erroneously supposing him then to be a resident of this state, the plaintiff alleged that fact in his original petition in that suit, and citation was issued in pursuance of such allegation to Lamar county, Tex. That upon the sheriff's return being made, showing the defendant to be out of the state of Texas, plaintiff filed an affidavit in said cause to the effect that defendant was absent from the state of Texas, and praying for citation by publication. Citation was thereupon issued and published according to law; and thereafter, on the

3d day of October, 1893, judgment was rendered in plaintiff's favor against all of the defendants; that is to say, against the defendants Mabee and Hollon, for the amount of the note sued on, including interest and attorney's fees, amounting to the sum of $431.97. * * * That the record in said cause shows that said defendants Mabee and M. C. and Guy L. Thompson had been cited by publication only; and the judgment therein, which defendant now pleads as a merger and res adjudicata, shows on its face that fact, and that it was rendered upon such service, and upon that only." The supplemental petition further alleges that the land upon which it was sought to foreclose a vendor's lien in the same proceeding was sold in compliance with an order of the court, and that a credit for the sum of $19.45 resulting from that sale was entered upon the note. It is unnecessary to further notice the pleadings.

It seems to be conceded in the briefs of both parties that the only question which this court is called upon to decide is whether the judgment rendered in favor of the appellant, McDonald, against Mabee and others in cause No. 5468 in the district court of Lamar county, Tex., in 1893, was a valid personal judgment against Mabee.

This being an action instituted in the county court, any issue questioning the validity of a judgment rendered in the district court necessarily presents a collateral, and not a direct, impeachment. In a collateral attack the validity of a domestic judgment must be determined by the record itself, and not by evidence aliunde. Martin v. Burns, 80 Tex. 679, 16 S. W. 1072; Murchison v. White, 54 Tex. 82; Treadway v. Eastburn, 57 Tex. 213; Holt v. Love, 131 S. W. 857; Hardy v. Beaty, 84 Tex. 562, 19 S. W. 778, 31 Am. St. Rep. 80; Horst v. Lightfoot (Tex. Sup.) 132 S. W. 761. Hence it follows that the findings of the trial court with reference to Mabee's residence at the time of the original suit and the publication of citation are wholly immaterial, and add nothing by way of supporting the judgment from which this appeal is prosecuted. The situation presented is somewhat peculiar. The attack upon the validity of that judgment is made by the plaintiff, the one who presumably would insist upon its validity, while its validity is asserted by the defendant, the party who would ordinarily be expected to make the assault. That peculiarity, however, will not be considered as affecting the question before the court.

There is no statement of facts in this record, and in order to ascertain the contents of the judgment recovered in the former suit we must have recourse to the findings of the trial court. From these I gather the following facts: That H. D. McDonald filed his petition in the district court of Lamar county on the 30th of November, 1892, against F. A. Mabee and others, not necessary to name,

seeking to recover a judgment on the note now forming the basis of this suit, and to foreclose a vendor's lien on a tract of 260 acres of land situated in Lamar county. The petition alleged that all of the defendants resided in Lamar county, Tex. Citation was issued upon that petition, on the 29th of December, 1892, in form required by law, directed to the sheriff of Lamar county, Tex. The sheriff returned the citation with the following indorsement: "Came to hand on the 29th day of December, 1892, at 10 o'clock a. m., and executed within said county of Lamar on the 30th day of December, 1892, by delivering to the within-named defendant D. P. Hollon in person a true copy of this citation. The remaining within-named defendants were searched for diligently, and learned to be out of the state of Texas." On February 20, 1893, plaintiff McDonald made his affidavit before the district clerk, in which he stated that the defendants Mabee and M. C. and Guy L. Thompson, the other defendants, were absent from the state of Texas, and prayed that they be cited by publication. The affidavit was filed on the same day, and is now among the papers in that case on file in the district clerk's office. Citation was issued accordingly, and published for the time required by law previous to the return day in a newspaper published in Lamar county. On the 3d day of October, at a regular term of the district court, the final judgment was entered in favor of H. D. McDonald against F. A. Mabee, M. C. Thompson, and Guy Thompson. The recitation in the judgment, so far as material, is as follows: "Now on this day the cause was called; and it appearing to the court that at a former term, to wit, the spring term, 1893, an interlocutory judgment by default was rendered against the defendant D. P. Hollon, who had been duly cited by personal service more than ten days before the first day of said term, and it further appearing to the court that the defendants F. A. Mabee, M. C. Thompson, and Guy L. Thompson had been duly and legally cited by publication to appear and answer herein by citation duly issued in pursuance of law, and which was duly and legally published in the Weekly News, a newspaper published in said county of Lamar, for four successive weeks previous to the return day thereof," etc., reciting thereafter the appointment of an attorney to represent the absent defendants, and rendering a personal judgment in proper form against all of them for the amount sued for, and a foreclosure of the vendor's lien on the land described in the petition.

When the entire record is considered, it appears that Mabee, the only party to that suit with which we now have any concern, was a resident of Texas, but was at the time absent from the state; that he was cited by publication only, and never entered his appearance in the case. If these disclosures are to be taken as affirmatively showing the rendition of a personal judgment without proper process, it must be because Mabee was cited only by publication while absent from the state. The question, then, is, Does the mere absence from the state, even though temporary, of a citizen domiciled in Texas, place him beyond the reach of the processes of our courts, so as to render them powerless to determine any issue involving his personal liability? The majority of the court have answered that question in the affirmative. I am frank to concede that the position which they have taken is not without support, both in reason and authority, and the argument upon which it is grounded has much force to commend it. The high regard which I entertain for the legal ability of my associates makes me loath to record any dissent from their views on any question which has received their thoughtful consideration. Difference with them is alone sufficient to cause me to doubt the correctness of my own conclusions until I have satisfied myself by as careful an investigation as I may be able to give the subject. Such sentiments and misgivings furnish the only excuse I have to offer for the length to which I have extended this discussion.

The doctrine announced in Pennoyer v. Neff, cited in the opinion of the majority, and which has been followed throughout the country, is relied upon as controlling the disposition made of this case. The facts of that case show that the judgment there attacked was rendered by a state court in Oregon against Neff, the defendant in the suit, upon service of citation by publication, that Neff was, at the time he was sued and notice published, domiciled and residing in the state of California, and that he never entered his appearance in the proceeding. Upon that state of facts Justice Field announced the rule that: "Where the entire object of the action is to determine the personal rights and obligations of the defendants—that is, where the suit is merely in personam—constructive service in this form upon a nonresident is ineffectual for any purpose. Process from the tribunals of one state cannot run in another state, and summon parties there domiciled to leave its territory and respond to proceedings against them." As stated by the court in that opinion, that was no new doctrine, but had been recognized in that and other courts in many previous adjudications. So far as I have been able to ascertain, neither before nor since the case of Pennoyer v. Neff was decided has the Supreme Court of the United States enlarged the rule there laid down, so as to include a state of facts like that presented in this appeal. It is only by the application of a rule of construction to the reasons assigned for the holding there announced that that case can be regarded as direct authority for the conclusion reached by the majority in this case. The statement that the processes

issued from state courts can have no extraterritorial effect, when standing alone and without qualification, strongly supports the contention of counsel for appellant. If the use of this language immediately following, *"and summon parties there domiciled to leave its territory and respond to proceedings against them"* (italics mine), does not limit the rule previously announced, then I see no escape from the conclusion reached by the majority and insisted upon by the appellant, unless that decision is to be ignored as an authority. In that case, and others where the same question is considered, the limitation placed upon the power of state tribunals is predicated upon the lack of jurisdiction in the court over the person of the nonresident where constructive service alone is relied on. It occurs to me that in its final analysis the question is more properly one which involves the power of a state, rather than the jurisdiction of the state court. If the state can constitutionally confer judicial authority upon its courts, then in this instance the court did not exceed its power. Article 1235, Sayles' Ann. Civ. St. 1897. It is not contended that there was any irregularity in the original proceedings in observing the statutory requirements.

That the Supreme Court of the United States does not mean to hold that a personal judgment cannot, under any circumstances, be rendered against an absent defendant upon constructive service is made clear by reference to other decisions rendered by it. In Knowles v. Logansport G. & C. Co., 19 Wall. 59, 22 L. Ed. 70, that court, after deciding that a judgment rendered upon constructive service against a nonresident would not support a personal judgment against the defendant, said: "We do not mean to say that personal service is in all cases necessary to enable the court to acquire jurisdiction of the person. Where the defendant resides in the state in which the proceedings are had, service at his residence, and perhaps other modes of constructive service, may be authorized by the laws of the state; but in the case of nonresidents like that under consideration personal service cannot be dispensed with, unless the defendant voluntarily appears." Therefore, in deference to the judgment of the court upon the issue of jurisdiction, if there were any circumstances, not inconsistent with the facts disclosed by the record, under which the district court of Lamar county could have rendered a personal judgment against Mabee during his absence from the state, we must assume that those conditions were found to exist, and formed the basis of the adjudication made.

That a court of this state may render a personal judgment against a resident defendant domiciled here during his absence from the state upon constructive service, is, I think, well settled by the decisions of this state. In Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121, the judgment was attacked upon the ground that A. T. Oliver, the party against whom it was rendered, was absent from the state, having his residence in Brazil at the time he was sued. The record shows that he was cited by publication, but that he never appeared, and a judgment was rendered against him by default. In disposing of this feature of the case, Justice Henry, who rendered the opinion of the court, said: "The property of the deceased (Oliver) was in this case charged with the payment of his debts. This charge was superior to the claims of his heirs. The facts show that he had abandoned his residence in this state and was permanently domiciled elsewhere when he died. That removes from this case all questions of homestead and allowance, which usually will arise in such cases. * * * The evidence is, we think, sufficient to support the court's finding that A. T. Oliver was at the date of the rendition of the judgment against him a nonresident of the state of Texas. Appellants claim that the rule that jurisdiction over the person cannot be acquired merely by service by publication does not apply to citizens of Texas, but is limited to nonresidents. The rule that service by publication only does not confer jurisdiction in our courts is adopted by us in deference to the authority of the case of Pennoyer v. Neff, and we are not disposed to extend it beyond the doctrine announced in that case. We understand that authority holding that such service does not confer jurisdiction over a nonresident of the state does not extend any further; and we hold, as heretofore, that such service upon our own resident citizens made in pursuance of our statute is binding."

In Fernandez v. Casey, 77 Tex. 452, 14 S. W. 149, a judgment had been rendered in the district court against Fernandez & Ackerman on service by publication after both of them had left the state. Neither of them was ever served with any other process, and neither entered his appearance in the suit. The record shows that Ackerman left the state for the purpose of taking up his residence elsewhere, and did so; but that Fernandez only traveled around through another state for about six months, and then returned to Texas. A personal judgment was rendered against Fernandez upon that service; thereafter an execution was issued and levied upon real estate belonging to him, and he sought by an application for a writ of injunction to restrain the sale, upon the ground that the judgment was invalid, because at the time of its rendition he was absent from the state and had never been personally served, nor had he entered his appearance in the suit. Justice Henry, again rendering the opinion of the court, said: "The facts, we think, clearly show that Fernandez was a resident citizen of the state of Texas, and that, though he was temporarily absent from the state, he had never acquired a domicile elsewhere. Under these circum-

stances we think the service by publication of process against him according to the provisions of our statutes conferred upon the justice court the jurisdiction that it exercised in rendering judgment against him."

Horst v. Lightfoot (Tex. Sup.) 132 S. W. 761, is a very recent decision by our Supreme Court, in which the case of Northcraft v. Oliver, supra, is cited with apparent approval. This was an action of trespass to try title, and the defendant in the suit claimed under an execution sale by virtue of a judgment recovered by Mouly against Valentine Schneider. The judgment upon which the execution was issued recited that the defendant failed to appear, but was silent as to service on him. The original petition in the case claimed only an indebtedness from the defendant to the plaintiff, and alleged that the defendant was absent from the state, so that ordinary process of law could not be served on him, and prayed for service by publication. The affidavit for service by publication was as follows: "The facts set forth in the foregoing petition are correct and true, and, further, the said Schneider is not a resident of the state." The citation issued and published recited that Schneider was a nonresident. The court held that the record disclosed upon its face that the personal judgment rendered against Schneider was void. Justice Williams, in delivering the opinion, said: "But we must sustain the contention that the judgment was void, because the record in that case shows that the court never acquired jurisdiction over the person of Schneider. The judgment itself being silent as to jurisdictional facts, other parts of the record supplying them may be consulted, and they show that Schneider was a nonresident of the state, and therefore not to be brought within the jurisdiction of the court by any process it could issue. Treadway v. Eastburn, 57 Tex. 209. *The allegation of the petition that the defendant was absent from the state, by itself, would not be inconsistent with the existence of power in the court to reach him with its writ, since one may be absent from the state and yet be a citizen and resident in it, and therefore amenable to the process of its courts.* (Italics mine.) But his absence may be because of nonresidence; and this is what the petition and the affidavit for publication, considered together, show to have been true of Schneider, and it follows that jurisdiction over his person could not be obtained by constructive service," citing Northcraft v. Oliver, supra. The views expressed by our Supreme Court in the above cases are sustained by the following authorities outside of the state: Bickerdike v. Allen, 157 Ill. 95, 41 N. E. 740, 29 L. R. A. 782; Re Denick, 92 Hun, 161, 36 N. Y. Supp. 518; De la Montanya v. De la Montanya, 112 Cal. 101, 44 Pac. 345, 32 L. R. A. 82, 53 Am. St. Rep. 165 (dissenting opinion); Freeman on Judg.

§ 570; 2 Black on Judg. § 907; 1 Wharton on Conflict of Laws, § 237b.

Mr. Freeman, in the section above referred to, after considering at some length the authorities upon this question, says: "The position, however, which seems to be best sustained both by reason and precedent, is that a state has the authority to provide the means by which its own citizens may be brought before its courts, that the courts of other states have no authority to disregard the means thus provided, and finally that every judgment or decree obtained in a state against one of its citizens by virtue of a lawful, though constructive, service of process, should be as obligatory upon such citizen in every other state as it is in the state whence it is taken. Nor is it destructive of the extraterritorial effect of a judgment based on constructive service that the defendant, being a citizen of the state, was temporarily absent therefrom. It is sufficient that he was at the time subject to the laws of the state and to the territorial authority of the court."

Mr. Black, after quoting approvingly from Harryman v. Roberts, 52 Md. 64, says: "Consequently, if the defendant was subject to the jurisdiction of the state where the action was brought, and process was served upon him in accordance with its laws, as by leaving a copy of the summons at his usual residence, the judgment is presumably valid, although he was in fact temporarily absent from the state."

That these authorities are opposed to the contention of the appellant will hardly be questioned. But there are cases cited in the opinion by the majority holding to the contrary. Under such conditions I understand it to be our duty to follow the rules adopted by the court of last resort in this state.

But aside from the question of authority, there appears to me to be room for a well-merited distinction between the situation presented in the case of the defendant in Pennoyer v. Neff, and others of a similar nature, and that of Mabee. Neff was a resident of the state of California, and was sued and cited by publication in the state of Oregon while still at the place of his residence. Mabee was a resident and citizen of Texas, the state in which he was sued and cited, and was only temporarily absent. There is much reason for holding that Neff, situated as he was, should not be compelled to leave his home, go into a foreign jurisdiction, and there defend himself against a claim of personal liability. A rule permitting that to be done would not only deprive such a defendant of the right to have questions affecting his personal liability determined by the laws and regulations of his domicile, whose protection he had a right to claim, but would render him amenable to foreign laws, to which he had in no wise subjected himself. No such consider-

ations can be urged to justify the application of the same rule to the case of Mabee. He was a resident of the state in which he was cited; had voluntarily made it the place of his domicile. In so doing he submitted his person to the dominion of the laws of Texas, invoked their protection, and had the right to enjoy such privileges and immunities as they afforded. Certainly he could not complain at being called upon to defend himself in civil litigation at his own home, or object that his rights were to be determined by the laws of the state of his own adoption.

But it may be asked, Why should it be said that process issued from the courts of this state would reach him while sojourning beyond its territorial limits, and not have the same effect upon a nonresident? If to make it binding upon a nonresident would be giving extraterritorial effect to domestic writs, why would not the same results follow in making them binding upon absent residents? How can it be said that the writs will go beyond the state line and reach one defendant, and not reach all others in the same territory? The difficulty of pointing out an appreciable distinction between the two different situations, and of giving a satisfactory reason for it, is probably the cause of the conflicting views on the subject. But that there is a difference and that a distinction should be made is, I think, too obvious to be ignored.

The issuance and service of citations in civil suits, as is well known, are intended only for the purpose of giving notice to defendants of the institution of suits against them, and of their nature and purpose, in order that such parties may have an opportunity to present whatever defenses they may see proper. Writs issued for that purpose are not intended to have any compulsory effect; obedience is optional with the party served. Within certain limitations the state may prescribe any form for serving such notice upon its citizens, or those found within its territorial limits, that it deems reasonable and sufficient. Until notice is given in some legally prescribed form, or the defendant voluntarily appears in the suit, no court has the authority to pronounce any judgment against him. To do otherwise would not only violate a statutory requirement, but would disregard a fundamental rule of justice.

We come, then, to the question: The state having provided by legislation that notice by publication of a citation is sufficient to empower its courts to determine questions affecting the personal liability of its citizens, or residents, while absent from the state, and to pronounce judgment thereon, is this method so unreasonable and insufficient as to deprive such citizen of his property without due process of law?

Using the terms "resident" and "citizen" as synonymous, the resident stands in a different attitude toward the state of its adoption from that occupied by the nonresident. By construction the former, though physically absent, is ever present in the state for the purpose of holding and enjoying certain rights and privileges not accorded to the latter, as, for instance, a homestead right and other exemptions, the right of local suffrage, and the privilege of having his children patronize the state's public free schools. By residing within its limits and acquiring the right to the benefits conferred by its laws, the citizen submits himself to the state's laws and consents to be governed by all of its valid enactments. It is often said that consent cannot confer jurisdiction upon a court, but that is true only as to the subject-matter in controversy. Consent can confer jurisdiction over the person of the defendant, and the state may prescribe the form by which this consent shall be evidenced. Is it going too far to say that one who takes up his residence within the state invokes the protection of its laws, and enjoys its rights and immunities, shall be held to have consented that he may be served with notice by publication when temporarily beyond its limits? It is now the well-settled law that a foreign corporation seeking to do business in another state may be required, as a condition upon which it will be admitted, to designate in advance some person, or place, with whom, or where, citations issued in civil suits against it may be left, and that such service will authorize the recovery of a personal judgment. This exaction may even be extended to the stockholders of the corporation. Wilson v. Seligman, 144 U. S. 41, 12 Sup. Ct. 541, 36 L. Ed. 338. In the case referred to, after announcing the rule as above stated, the court said: "In such cases the service is held binding because the corporation, or the stockholders, or both, as the case may be, have consented (in advance) that such service within the state shall be sufficient and binding; and no individual is bound by the proceeding who is not a stockholder."

In some states the leaving of a citation at the residence of a defendant is sufficient notice, and will support a personal judgment by default. I know of no instance in which the reasonableness of such method of giving notice has ever been successfully attacked. Such service would not be vitiated by showing that the defendant was at the time beyond the limits of the state. If not, then why consider void service given by publication under similar circumstances? To hold that constructive service is binding on an absent defendant is not giving such service extraterritorial effect, but is merely saying that the absent citizen is amenable to its intrastate effect. If such an absentee is constructively within the state for the purpose of retaining and exercising his rights as a citizen, I see no good reason why he should not be held amenable to the processes of its courts. He cannot claim the benefit of the rights, privileges, and immunities ac-

corded to a citizen, and escape the burdens and exactions the state imposes upon citizenship. He cannot gather its good things with one hand, and ward off its processes with the other.

In my judgment this case should be affirmed.