GRAFTON H. BAYNE, ADM'R, V. WILLIAM GARRETT, ADM'R.

Administration granted in 1842; administrator's final account filed and approved and administrator discharged in 1848; application filed in 1854 by creditor, for payment of a judgment recovered against said administrator in 1850, and affirmed on appeal to the Supreme Court in 1851; it appeared that notwithstanding the discharge in 1848, the administrator had afterwards acted and been recognized in that capacity by the Probate Court : Held, on the authority of Townsend v. Munger, 9 Tex. R. 300, and Poor v. Boyce, 12 Id. 440, that the presumption was that the order of discharge was revoked; and the judgment of the District Court which reversed the judgment of the Probate Court sustaining the application, was reversed, and the judgment of the Probate Court was affirmed.

Error from San Augustine.   Tried below before the Hon. Archibald W. O. Hicks.

*Henderson & Jones*, for plaintiff in error.

*O. M. Roberts*, for defendant in error.   This record shows a final settlement, recognized by the County Court, and a full discharge as administrator Jan. 31st, 1848, and that this proceeding was instituted against Garrett in 1854.

This Court has decided that after administration has been closed, it cannot be administered on again.   (Hunt v. Horton, 12 Tex. R. 285 ; Fisk v. Norvel, 9 Id. 13.)

That an administrator discharged, is not amenable to the County Court as administrator, see Farris v. Northcote, 6 Tex. R. 185.

The farthest the Court has gone is, that the neglect to continue the administration from year to year by express order, will not invalidate his acts relating to third persons.   (Poor v. Boyce, 12 Tex. R. 440.)

Under these decisions it is clear, that though property may

have been left in Garrett's hands on the close of administration, and that had been established in evidence, it was the property of the heirs of Jacob Garrett, vested in them, and not subject to further administration.

LIPSCOMB, J. There has been a great deal more difficulty in reading this record and understanding it, than is presented by the law of the case. The Clerk seems to have been experimenting upon how much perplexity he could throw into his transcript ; and if so, he has certainly been eminently succesful. Instead of the transcript presenting the different compo nent parts in their proper consecutive connection, it has the appearance of each having been written on a separate piece of paper, and then well shuffled together, after which he has transcribed from each in the order they were left by the shuffler. But, with great labor on the part of counsel, we believe that the different parts have been properly and finally joined together, in the order in which the transcript ought to have presented them.

It appears that in 1854, the plaintiff in error filed his petition in the Probate Court for San Augustine county, against the defendant in error, in which he stated that at the October Term, A. D. 1850, of the District Court for San Augustine county, one Edmund P. Gaines recovered a judgment against the defendant in error, as the administrator of Jacob Garrett, for eleven hundred dollars and costs of suit, which was ordered by the District Court to be paid out of the assets of Jacob Garrett, in due course of administration ; that the defendant in error appealed from this judgment to the Supreme Court in 1851, and the Supreme Court affirmed the judgment in all things ; that Gaines assigned the judgment to the plaintiff in error, for the benefit of the estate of David Kennedy, of which the plaintiff in error is administrator ; and that defendant in error has not paid any part of the judgment, nor made any account of his administration since the rendition of the

judgment; wherefore he prays that defendant in error be called on to account, &c.

To this petition the defendant in error pleaded that the plaintiff in error was not the administrator of the deceased David Kennedy, because that administration on said Kennedy's estate had been opened more than twelve months previous to the institution of this suit, and there had been no continuance thereof, and that it was closed by operation of law; also, that the defendant was not the administrator of Jacob Garrett, deceased, at the institution of this suit; but that administration had been closed in 1849 by operation of law; also, that he is not responsible to make distribution of the proceeds in his hands, as shown by the sale of property to the full extent, because his account of final settlement of said estate shows that the estate is indebted to him six hundred and four dollars and twenty-six cents for the preservation and management of the estate, which account had been allowed him.

There was a judgment in the Probate Court, that defendant, as the administrator of Jacob Garrett, pay into the Court for the use and benefit of the estate of David Kennedy, the amount of the judgment mentioned in the petition, and that execution issue to enforce the order. An appeal was taken to the District Court, where a jury was waived and the case submitted to the Court on evidence, of which the following is the substance : In 1842 an inventory of the property belonging to the estate of Jacob Garrett was returned to the Probate Court, appraised at $6117 63 ; there is no list of debts due from the estate, or any proof of such. In June, 1847, there is an application to distribute, among the heirs, such property as may be pointed out by the administrator, and in July of the same year there is a distribution of fourteen out of seventeen slaves mentioned in the inventory, and of nothing more, which partition is confirmed by the Probate Court at its July Term, 1847. There is next of record a final account of the defendant in

error, as administrator, on the 31st of January, 1848, in which he credits himself with $2525 76, and charges himself with the receipt of $3197 98, which, he says, leaves a balance due the estate of $654 26. This account was sworn to and approved. About the same time there was an order in the minutes of the Probate Court, discharging the defendant from further duty as administrator, leaving this balance due of $654 26, and all the property of the estate, except the part of the slaves which had been distributed in 1847, in his hands. There was then read in evidence copies of proceedings from the District Court of San Augustine county, had subsequent to this order of discharge, showing the action of the defendant in error in that Court, as administrator of the estate of Jacob Garrett, which copies were on file in the Probate Court, and of these were the transcript of the suit between Edmund P. Gaines and the defendant in error, as administrator, containing the judgment mentioned in the plaintiff's petition in the Probate Court, which suit was admitted to have been instituted in 1850 ; also a copy of the judgment in the Supreme Court on appeal in same case, which is mentioned in plaintiff's petition. There next appears an order of the Probate Court at its July Term, in 1851, purporting to be rendered at the suit of Robert Martin, Clerk of the District Court, against the defendant in error, as the administrator of Jacob Garrett, which recites that there was due said Martin $73 for costs in suits in the District Court of San Augustine county against the estate of Garrett, and that the defendant in error had applied for an order of sale of property belonging to the estate of Jacob Garrett to pay said costs, and also the sum of $1150 for and on account of the debt due on the Gaines judgment, and ordering certain property to be sold and the proceeds to be applied to the payment of the claim of the said Martin, and other judgments against the estate of the said Jacob Garrett. After this there is an account rendered Dec. 31, 1852, in the Probate Court, by the defendant in error, as the administrator of Jacob Garrett, in

which he charges himself with $1002, proceeds of a sale of the homestead of Jacob Garrett, and from this he subtracts, instead of adding, $654 26, balance due the estate as by his account of 1848. There was some evidence about the partition in 1847, and the sale of land mentioned in the account of 1852, not material to be noticed. Upon these facts the District Judge rendered the following judgment: "Being satis-"fied that the estate of Jacob Garrett, deceased, had been "closed and the said William Garrett discharged as adminis-"trator before this proceeding was commenced in the Probate "Court, it is therefore considered that the said Probate Court "of San Augustine county had no jurisdiction of this proceed-"ing, and therefore the said supposed judgment of the said "Probate Court in the premises is set aside, and the said pro-"ceedings by the said Grafton H. Bayne, administrator of D. "Kennedy, against the said William Garrett, administrator of "Jacob Garrett, deceased, be dismissed, and that William "Garrett do have and recover," &c. This judgment, dismissing the suit, is assigned by the plaintiff in error as the ground on which he asks a reversal of the judgment. The Court below based its decision evidently upon the order of the Probate Court of 31st Jan., 1848, as follows, i. e.: William Garrett, administrator of the estate of Jacob Garrett, having this day presented his final settlement of the said estate, and the same having been duly examined in open Court, it is therefore ordered, that the said account be accepted as a full, final and complete settlement of the said estate; it is further ordered by the Court, that the said William Garrett be discharged from further duty as administrator of the said estate; that his administration bond be cancelled, and that his securities be discharged from further liabilities thereon.

It has been shown that the acts of the administrator did not stop with this order of the Court, but that he continued to act and be recognized by the Court, without any reference to this order of discharge, as the administrator of Jacob Garrett; and

under the authority of Townsend v. Munger, (9 Tex. R. 300,) it must be presumed that the order dischaging him had been revoked. In that case, the record showed that Townsend had been discharged from the administration, and that Munger had been appointed, had given bond, and bond approved. The record next showed Townsend acting as administrator, returning his account as administrator, which was recognized and approved by the Court, neither showing the rescission or revocation of the order appointing Munger, nor any order reinstating Townsend. This Court said that under such circumstances, it must be presumed that the order removing Townsend and appointing Munger had been set aside. So in the case of Poore v. Boyce, (12 Tex. R. 440,) it was held that the administrator continuing to act in his fiduciary character, and recognized as such by the Court for a long time, an extension of his authority will be presumed. That the defendant continued to act as administrator, and was recognized as such by the Court down to 1852, cannot admit of a single doubt. In the year last named, he filed an account as administrator ; nor did he ever claim an exemption from his duties as such, until proceedings were commenced to compel him to pay this judgment debt. He will not now be heard to say that he is not the administrator ; his own acts preclude such defence. It is probable that the case of Townsend and Munger, and Poore and Boyce, were neither of them before the Court below when this case was decided, and we believe that if the attention of the Court had been called to those cases, or to the act of the party himself, claiming and acting as administrator, the decision would have been different. We have no doubt or hesitancy in reversing the judgment of the District Court, and affirming the judgment of the Probate Court, and the case is remanded with directions that the judgment shall be so rendered.

Reversed and reformed.

JOSEPH D. JOHNSON'S ADM'RS. v. CADWALLADER W. CHENEY.

Where there was an entry of dismissal " as per agreement filed," and said agreement was an agreement for arbitration, and contained a recital that said cause had been " dismissed by the plaintiffs, so that the matters and things in controversy might be adjusted in accordance with the provisions of the Act of the Legislature of Texas, passed 25th April, 1846," it was held that said order was merely a suspension of the ordinary proceedings, to give place to the proceedings under the agreement to arbitrate, and that upon refusal of the arbitrators to act, or the discovery of the fact that the agreement to arbitrate was invalid, the cause remained in Court, to be disposed of in the ordinary course.

It would seem that an administrator has no power to submit to arbitration claims in favor of his intestate.

Where a cause is inadvertently dismissed, it may, upon sufficient cause shown, after notice to the adverse party, be reinstated at the next Term of the Court.

The defendant being represented in Court, and having the opportunity afforded him to contest the application, (to reinstate a cause dismissed at the previous Term,) it could make no difference to him, and it can make none as matter of practice, that the application was by motion, instead of by petition. The form of the application is immaterial, so that the opposite party has timely notice, and the opportunity afforded him to contest it.

Appeal from Rusk. Tried below before the Hon. William W. Morris.

Suit commenced by appellants against appellee, Nov. 15th, 1853. On the 18th day of the Spring Term, (which commenced on the ninth Monday after the third Monday in March, 1855,) there was an entry as follows : Now come the plaintiffs by their attorneys, and dismiss this case as per agreement filed. It is thereupon considered by the Court, that the defendant recover of the plaintiff all costs in this behalf expended, and that this judgment be certified to the County Court to be paid by said plaintiffs in due course of administration.

The agreement referred to was an agreement to arbitrate, which had been filed February 8th, 1855. It commenced as

follows :　Whereas a suit has been pending in the District
Court for said county, wherein Alexander Dixon as adminis-
trator and Mary J. Johnson administratrix of the estate of
Joseph D. Johnson, deceased, are plaintiffs, and Cadwallader
W. Cheney is defendant, which has been dismissed by the
plaintiffs, so that the matters and things in controversy there-
in may be adjusted in accordance with the provisions of an Act
of the Legislature of Texas, passed 25th April, 1846, &c.

On the 22nd of February, 1855, the award of the arbitra-
tors was filed, showing that being unable to agree, they had
appointed an umpire. The award was in favor of plaintiffs for
$554 and was signed by all the arbitrators.

On the 18th day of the Spring Term, 1855, the Court set
aside the award on application of the defendant, for mistake,
and referred the case back to the same arbitrators. The arbi-
trators met several times, but made no progress, and sometime
after August 13th, 1855, met and agreed to decline a re-inves-
tigation of the case ; which they certified to the Clerk.

On the 7th of December, 1855, the plaintiffs moved to re-in-
state the cause on the docket, on the grounds

1st. That the suit was dismissed under the impression that
the matters in controversy would be settled by arbitration.

2nd. Because the arbitrators refused to arbitrate the matter
after it was re-committed to them.

On the next day plaintiffs moved " to amend the judgment
of dismissal, *nunc pro tunc*, as improperly entered upon and in
direct violation of the agreement."

These motions were overruled, and plaintiffs appealed.


*F. W. Bowden*, for appellants.

*M. Casey* and *Stedman*, for appellee.


whether the Court erred in refusing the plaintiffs' motion that the cause be re-instated and proceed to trial as if there had not been a submission of it to arbitration. The order of the preceding Term, which is relied on as excluding the power of the Court over the case, states that it is dismissed by the plaintiffs, "as per agreement filed." The agreement here referred to was the agreement to submit the decision of the case to the award of arbitrators, and states that the case "has been dismissed by the plaintiffs, so that the matters and things in controversy therein may be adjusted in accordance with the provisions of an Act of the Legislature of Texas, passed 25th of April, 1846." The object of the order of dismissal is thus apparent. It was not really to discontinue or dismiss the plaintiff's suit; but only to refer the decision of it to arbitrators, instead of the Court and jury. It evidently was not intended that the plaintiff should go out of Court, and take nothing by his suit; and the order does not contain the usual formula to that effect. But the intention was that the trial, instead of proceeding before the Court, should be before the arbitrators chosen by the parties. It seems to have been erroneously supposed, that it was necessary, for that purpose, that the suit should be formally dismissed. But neither the Court nor the parties appear to have considered that the Court had lost its jurisdiction of the case. For upon the coming of the award, they proceeded to litigate under the style of the case as it had previously stood upon the docket; and upon setting aside the award, the Court referred the case back to be decided by the arbitrators, under the agreement of submission. It plainly was not within the contemplation of the Court, or the parties, that the suit was determined by the order of dismissal, or that the Court had thereby lost its power and jurisdiction over the case, though that order had been entered. It manifestly was not intended to have and, we think, did not have, the ordinary effect of dismissing a suit; that of putting a party out of Court, and ending the litigation in that suit. In point of fact, the lit-