WATERMAN LUMBER & SUPPLY CO. et al.
v. ROBINS et al.

(Court of Civil Appeals of Texas. Texarkana.
April 9, 1913. On Motion for Re-
hearing, April 24, 1913.)

1. JUDGMENT (§ 518*)—ORDER OF PROBATE—
COLLATERAL ATTACK.
Claim that a probate order appointing an
administrator de bonis non, and authorizing a
sale of an unlocated balance of a headright cer-
tificate, was without jurisdiction of the probate
court, because the estate of the deceased cer-
tificate holder had been finally closed, was a
collateral attack on the order.
[Ed. Note.—For other cases, see Judgment,
Cent. Dig. §§ 961, 962; Dec. Dig. § 518.*]

2. JUDGMENT (§§ 489, 497*)—JURISDICTION OF
SUBJECT-MATTER—COLLATERAL ATTACK.
A judgment rendered when the court has
no jurisdiction of the subject-matter is void,
and open to collateral attack at any time; but
such want of jurisdiction in a court of general
jurisdiction must be ascertained from the rec-
ord alone, and cannot be proved aliunde.
[Ed. Note.—For other cases, see Judgment,
Cent. Dig. §§ 924, 925, 937, 938; Dec. Dig. §§
489, 497.*]

3. EVIDENCE (§ 178*)—BEST AND SECONDARY
EVIDENCE—LOST RECORDS—CONTENTS.
Where an order appointing an administra-
tor de bonis non and authorizing a sale of an
unlocated balance of a headright certificate was
attacked in trespass to try title for want of
jurisdiction of the probate court, and it appear-
ed that the probate proceedings in the adminis-
tration of the estate were lost, parol evidence
limited to the contents of the original records
was admissible; but parol evidence of the acts
and doings in the administration of the estate
constituting no attempt to show the contents
of the record was inadmissible.
[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 580–594; Dec. Dig. § 178.*]

4. EXECUTORS AND ADMINISTRATORS (§ 37*)—
DISCHARGE—FINAL ORDER—ADMINISTRATOR
DE BONIS NON—AUTHORITY TO APPOINT.
A final order discharging certain adminis-
trators of an estate absolutely was insufficient
to negative the power of the probate court to
thereafter appoint an administrator de bonis
non; there being nothing to show that the es-
tate had been finally closed.
[Ed. Note.—For other cases, see Executors
and Administrators, Cent. Dig. §§ 267–278;
Dec. Dig. § 37.*]

5. EVIDENCE (§ 82*)—PRESUMPTIONS—JUDI-
CIAL PROCEEDINGS.
Where an administrator de bonis non is
appointed after the discharge of original ad-
ministrators, it may be presumed unless rebut-
ted by the record that the order closing the
estate was set aside, and the administration
legally continued, when such presumption is es-
sential to sustain orders subsequently made
recognizing the continuance of the administra-
tion.
[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 104; Dec. Dig. § 82.*]

6. HUSBAND AND WIFE (§§ 265, 272, 276*)—
COMMUNITY PROPERTY—CONTROL BY HUS-
BAND—DISSOLUTION OF COMMUNITY.
During the life of a husband he has control
and management of the community property,
and may dispose of it for any purpose he sees
fit; but on his death the community is dissolv-
ed, and the widow holds her half interest as a
tenant in common with the children who suc-
ceed to their father's portion, and the adminis-
trators of the husband's estate can sell the wid-

ow's interest only to pay community debts as
provided by Pasch. Dig. art. 1363.
[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. §§ 896, 917–924, 1003–1007,
1032–1045; Dec. Dig. §§ 265, 272, 276.*]

7. HUSBAND AND WIFE (§ 276*)—COMMUNITY
PROPERTY—DEATH OF HUSBAND—SALE OF
WIFE'S INTEREST—BURDEN OF PROOF.
One claiming title to a wife's interest in
community property, under a sale by the hus-
band's executor or administrator, has the bur-
den of proving that the property was sold to
pay community debts.
[Ed. Note.—For other cases, see Husband
and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig.
§ 276.*]

8. HUSBAND AND WIFE (§ 276*)—COMMUNITY
PROPERTY — SALE OF WIDOW'S INTEREST —
PARTIES.
Neither a decedent's widow nor her heirs
can be made parties to a sale of her commu-
nity interest in the common property by the
husband's legal representative in the adminis-
tration of his estate, unless her property is
properly taken to discharge debts with which
it stands charged on dissolution of the marriage
relation, so that when disposed of for any oth-
er purpose by such administrator, she is not
bound by the orders of the probate court di-
recting and approving a sale thereof.
[Ed. Note.—For other cases, see Husband
and Wife, Cent. Dig. §§ 1032–1045; Dec. Dig.
§ 276.*]

9. HUSBAND AND WIFE (§ 276*)—COMMUNITY
PROPERTY—SALE OF WIDOW'S INTEREST.
Where a widow's interest in community
property has been sold by the husband's ad-
ministrator to pay debts, it may be presumed,
in the absence of evidence to the contrary, in
support of the sale that community debts exist-
ed; but such presumption is one of fact and
not of law, and would not be indulged where
there was an agreement of the parties to the
contrary.
[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. §
276.*]

10. HUSBAND AND WIFE (§ 276*)—COMMUNITY
PROPERTY—SALE TO PAY DEBTS.
Where an administrator de bonis non was
authorized by the probate court to sell the bal-
ance of an unlocated balance of a headright
certificate, and the records in the probate office
had been lost, evidence of a witness who had
been county clerk with the exception of a short
intermission from 1860 to 1876, during which
time the estate was in process of administra-
tion, that no claims against such estate had
been filed during his term of office was inadmis-
sible to impeach the judgment appointing the
administrator de bonis non; but was admissi-
ble to show whether there were community
obligations outstanding at the time of his ap-
pointment.
[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. §
276.*]

11. HUSBAND AND WIFE (§ 276*)—ADMINIS-
TRATION EXPENSES — TAXES — COMMUNITY
OBLIGATIONS.
Taxes and expenses of administration ac-
cruing after the death of an intestate are not
community obligations for which a widow's
interest in a land certificate could be sold.
[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. §§ 1032–1045; Dec. Dig. §
276.*]

Appeal from District Court, Shelby Coun-
ty; W. C. Buford, Judge.

Action by Jane Robins and others against

the Waterman Lumber & Supply Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Davis & Davis, of Center, J. T. Garrison, of Houston, and Greer, Nall & Bowers, of Beaumont, for appellants. Oliver J. Todd, of Beaumont, for appellees.

HODGES, J. The appellees are the heirs of John Buckley and wife, both of whom died many years ago. They instituted this suit against the appellant to recover a tract of 646 acres of land situated in Shelby county, and patented by virtue of an unlocated balance of a certificate, the original of which was issued to John Buckley in 1838. A portion of the certificate was located and patent issued to him in 1847. A certificate for the unlocated balance was not issued during his lifetime, but was sold by one J. L. Defeê, purporting to act as the administrator of the estate of John Buckley, to W. T. Winslow in 1880, and was thereafter located upon the land in controversy. It is admitted that the appellant holds under a regular chain of transfers from Winslow, and has whatever title passed to him at the sale made by Defee.

The case was tried before the court without a jury, and a judgment entered awarding one half of the land to the appellees and the other half to the appellant. Both parties complain of this judgment. The appellant contends that the sale by Defee passed the entire interest in the certificate to Winslow; while the appellees insist that the appointment of Defee as administrator of the estate of John Buckley was void, and that his sale passed no title whatever. The testimony shows that the courthouse of Shelby county, together with all of the county records, was burned in 1882. The only paper or record relating to this case which was preserved was an inventory and list of claims purporting to have been filed by the widow and son of John Buckley in 1860.

At the request of the appellant the trial court filed his conclusions of fact and law, of which we here give the substance:

(1) That the land in controversy was acquired from the government by John Buckley, same having been patented by virtue of a duplicate headright certificate issued to him for an unlocated balance.

(2) That the plaintiffs are the heirs of Buckley and his wife, representing 35 per cent. of all of the heirs left by them.

(3) That John Buckley died during the year 1860, leaving an estate consisting of about 1,400 acres of land and more than $5,000 in cash and good and solvent securities; that his son, Turner Buckley, and his surviving widow, Elizabeth Buckley, on the 4th of April, 1860, filed an inventory of his property in the probate court of Shelby county, showing no debts whatever against the estate.

(4) That these administrators were succeeded by Short and Dysart, who collected the notes and claims, shown by the inventory, during the Civil War, and accepted Confederate money in payment of same; that about the year 1866 or 1868 they filed their final account in the probate court showing their collections, and paid the Confederate money collected by them into the registry of the court for distribution among the heirs of John Buckley. The court then proceeds in this subdivision as follows: "And the said estate was fully administered, and the administrators and their bondsmen finally discharged, and no new administrators were then appointed, nor was any specific order made holding said estate (open) for any purpose, nor was any order specifically made declaring the said estate closed; but the order was only in effect that the two administrators then acting—that is to say, that Short and Dysart—had filed their final accounts as such administrators, and the final account was approved, and the said Short and Dysart discharged as such administrators, and the said Short and Dysart were released, and their sureties were released from any further obligations upon their bond as administrators of said estate."

(5) The court further finds that about the year 1873 J. L. Defee, husband of one of the daughters of John Buckley, upon his own application was appointed administrator of the estate of John Buckley, and after his appointment sued Short and Dysart and their bondsmen, contending that Short and Dysart had not legally accounted for the claims collected by them; that this suit was compromised by the parties, and the amount of the judgment rendered against Short and Dysart was paid to the administrator, and by him paid to the heirs of John Buckley.

(6) That Defee on or about May 15, 1880, filed an application to sell the unlocated balance of the headright certificate theretofore issued to John Buckley, and an order was entered by the court authorizing the sale; that a sale was thereafter made by Defee to W. T. Winslow, and that the defendants in this case hold the title which passed to Winslow by that sale. But the court adds: "Said sale purporting to convey only the interest of the said John Buckley in said certificate."

The remaining findings and conclusions of law filed by the court are literally as follows:

"Seventh. The court finds that said certificate was granted to John Buckley as a headright, and was community property of him and his said wife, and that no attempt was made to convey the title of the said wife in said certificate, or the title of her heirs, and same could not have been authorized unless it was made for the purpose of paying community debts of the said John Buckley and his wife, and the court finds that this

sale was not made for the purpose of paying any community debts.

### "Conclusions of Law.

"First. The court finds that the title to the property in question, so far as the interest of Mrs. Buckley was concerned, remained in her heirs at all times, and was not affected by the purported sale by the administrators of John Buckley, deceased.

"Second. The court finds that the title to the one-half community interest of John Buckley in said certificate remained in him to the time of his death, and is now in his heirs unless a good and sufficient title to same was passed by J. L. Defee, administrator, to W. T. Winslow on May 15, 1880, and the court does find that as to the community interest of said John Buckley a good and sufficient title passed by said conveyance.

"Third. The court finds, as a matter of law, that the filing of the final account by Short and Dysart, and its approval by the court, and the order finally discharging said administrators and releasing them and their bondsmen and appointing no additional administrators, nor specifically holding open said estate, did not, as a matter of law, operate to close said estate, and the said estate remained unclosed until about 1873, when Defee was appointed administrator thereof, and that the court had authority to appoint said Defee administrator.

"Fourth. The court finds that the plaintiffs are entitled to recover their respective interests in the one-half community interest of Mrs. Buckley, and that by reason of said sale by said Defee the defendants are the owners of the undivided one-half interest in said estate which was the property of John Buckley, deceased."

The correctness of these conclusions in several particulars is questioned by both parties to this appeal in appropriate assignments and cross-assignments of error.

Logically, the first proposition to be considered in disposing of these various assignments is that which questions the validity of Defee's appointment as administrator de bonis non of the estate of John Buckley. If this appointment was void for lack of power in the court to make it, then the sale made by Defee passed no title to the certificate by virtue of which the land in controversy was located; and the appellees, as the heirs of Buckley and his wife, would be entitled to recover all of the land against a mere trespasser. The statement of facts contains, among others, the following admissions of fact made by the parties: "That the unlocated balance of 646 acres was sold by J. L. Defee, who was then sole administrator of the estate of John Buckley, to W. T. Winslow on May 17, 1880, but the plaintiffs do not admit that the court had jurisdiction to make such appointment of said Defee as administrator. That the defendants hold under deeds duly acknowledged and recorded from W. T. Winslow to the 646 acres of land in controversy. That the unlocated balance of said certificate originally issued to John Buckley amounting to 646 acres was sold by said J. L. Defee, acting as administrator of the estate of the said John Buckley as aforesaid, in pursuance to orders of Shelby county probate court, which orders were duly entered of record, and that said sale of said unlocated balance of said certificate was duly made and reported, and that the report of same was duly confirmed and the administrator ordered to make title, which said order of sale, the report of same, and the confirmation of such sale were duly entered of record in the minutes of the probate court of Shelby county, Tex." From these admissions it appears to be conceded that Defee was appointed and acted under orders of the probate court in all respects regular and properly entered of record.

[1] This suit is in the usual form of an action of trespass to try title, and the answer presents only the general issue; hence the attack here made upon the order of the probate court appointing Defee is collateral. It is now well settled that the orders and decrees of probate courts are entitled to the same sanctity that is usually accorded to all courts of general jurisdiction, and the same presumptions will be indulged in support of their conclusiveness as is given to judgments of the district court. It is contended by the appellees that the probate court of Shelby county had no power or authority to appoint Defee, because the estate of John Buckley had previously been fully administered by Dysart and Short and the administration closed. If that be true and the facts are made to appear in the proper manner, it follows as a matter of law that Winslow, who purchased from Defee, took nothing, and the appellant, claiming under him, has no title.

[2] A judgment rendered at a time when the court has no power to act on the subject-matter over which he assumes jurisdiction is void and open to a collateral attack at any time. But the method of ascertaining the lack of that authority and want of power in a court of general jurisdiction must be ascertained from the record alone. It has been repeatedly held in this state that this can be done only by an inspection of the judgment itself, together with its accompanying record. Bradley v. Love, 60 Tex. 472; Martin v. Burns, 80 Tex. 676, 16 S. W. 1072; Murchison v. White, 54 Tex. 83; Crawford v. McDonald, 88 Tex. 630, 33 S. W. 325. In Murchison v. White, supra, the court said: "It is believed that a careful analysis of the cases on this subject will show that, in a collateral proceeding, the only contingency in which the judgment of a domestic court of general jurisdiction, which has assumed to act in a case over which it might by law

take jurisdiction of the subject-matter and the person, can be questioned is when the record shows *affirmatively* that its jurisdiction did not attach in the particular case." In Crawford v. McDonald, supra, Justice Denman, in rendering the opinion of the court, said: "There is, however, another rule of law equally well settled upon principles of public policy, which precludes inquiry by evidence aliunde the record, in a collateral attack upon a judgment of a domestic court of general jurisdiction, regular on its face, into any fact which the court rendering such judgment must have passed upon in proceeding to its rendition. Therefore, it is well settled that, where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence dehors the record that the judgment was rendered without any service whatever upon him. Logically, the judgment is in fact void, but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack the judgment is held valid. This rule is analogous to and probably as important as the rule forbidding the introduction of verbal testimony to vary or contradict the terms of a written contract, except in a proceeding instituted for the purpose of correcting, reforming, or annulling the same. These principles have long been acted upon by this court, as applicable to judgments of the district, probate, and justice courts, and have become settled rules of property in this state. Murchison v. White, 54 Tex. 78; Williams v. Ball, 52 Tex. 603 [36 Am. Rep. 730]; Brown v. Christie, 27 Tex. 73 [84 Am. Dec. 607]; Heck v. Martin, 75 Tex. 469, 13 S. W. 51 [16 Am. St. Rep. 915]; Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682 [23 Am. St. Rep. 370]; Martin v. Burns, 80 Tex. 677, 16 S. W. 1072; Hardy v. Beaty, 84 Tex. 562, 19 S. W. 778 [31 Am. St. Rep. 80]."

[3] The destruction of the probate records of Shelby county prior to 1882 rendered it impossible to produce them upon the trial. The only witnesses who testified concerning the probate proceedings in the administration of the estate of Buckley were Judge Parker and E. B. Wheeler. Judge Parker testified that he was county clerk of Shelby county from 1860 to 1876 except for a short period when all civil officers were removed by the military authorities. We quote the following from his testimony: "Turner Buckley and John Buckley's wife were the first administrators of the estate. Mrs. John Buckley died a short time after she was appointed, and my recollection is Turner Buckley resigned, and Captain D. M. Short and E. B. Dysart were appointed administrators of the John Buckley estate. Just after the close of the war it appeared that these last-named administrators had in their hands some considerable money that had been collected during the war on some notes. My recollection is this was Confederate money, and Capt. Short and Dysart made a settlement with the court turning in all the notes and property, and were discharged as administrators by an order of the court. The property, notes, and money collected on notes was all the property being administered on. The final order discharging D. M. Short and E. B. Dysart was entered discharging them as administrators absolutely. This final discharge was in the year 1867 or 1868. Defee and Buckley were appointed about 1871 on their own application which they filed. I do not know how long that administration continued." On cross-examination he said: "I think Short and Dysart were discharged along some time in 1867 or 1868. They collected notes in Confederate money, the administration then being open, and there was some talk that they were wrong in collecting Confederate money, and Capt. Short and Mr. Dysart learned that they had made a mistake in collecting this and they wanted to get shut of it themselves —wanted to be relieved, and asked the court to discharge them, and I think the court discharged them. After that Defee was appointed administrator of the estate." Judge E. B. Wheeler testified that he knew J. L. Defee, and represented him as an attorney in procuring his appointment as administrator of the estate of John Buckley; that he prepared and filed the application for Defee. He further stated that Defee's predecessors resigned; that at the time of Defee's appointment the administration was still open; that it had never been closed.

Much of what both of these witnesses stated does not pretend to be anything more than their recollections of what transpired during the course of the administration. It is only that portion of this testimony which purports to reproduce the contents of the original probate records that can be looked to as of any evidentiary value in passing upon the question now before us. The fact that those records were burned and could not be produced upon the trial does not alter the rule, but simply renders it permissible to introduce parol evidence of their contents. If the testimony of Judge Wheeler is correct, the administration was never closed. The trial judge, however, appears to have accepted as true the recollections of Judge Parker, the former county clerk.

[4] In only one instance does this witness attempt to state the contents of the old probate records, and that is where he says: "The final order discharging D. M. Short and E. B. Dysart was entered, discharging them

as administrators absolutely. This final discharge was in the year 1867 or 1868." This was not sufficient to negative the power in the probate court to appoint Defee as administrator de bonis non of the estate of John Buckley. It does not affirmatively show that the administration had been· closed, and that there was no necessity for further administration. Alexander v. Mavorick, 18 ·Tex. 179, 67 Am. Dec. 693. In the case just referred to the evidence showed that the following order had been made with reference to the administrator, after giving thè style of the case: "In this case appears James McGloin, administrator of said estate, and presents a final account of the settlement of said estate; it being examined and properly stated by the court, it is ordered that the same be admitted and filed, and the administrator discharged upon paying costs." The record also showed that a final account was filed and citation issued. It seems, however, that the court afterwards recognized McGloin as the administrator.

[5] The question arose as to whether or not this order operated to finally close the administration and deprive the court of the power to make other orders ìn the further administration of the estate by McGloin. In disposing of that question Justice Wheeler held that this order did not have the effect of closing the administration; ånd after discussing it in detail, said: "Notwithstanding the previous entry in the minutes it was disregarded, and he (McGloin) went on to administer and to close the administration with the sanction of the probate court, as though it had not been made. It was disregarded by all parties; and it cannot be now invoked to annul the subsequent orders of the court and his acts thereafter done in the due course of administration, and thereby defeat the title of a bona fide purchaser." Even after an order has been entered closing an administration, it will sometimes be presumed, unless rebutted by the record, that such an order was afterwards set aside and the administration legally continued, when such a presumption is essential to sustain other orders subsequently made recognizing the continuance of the administration. Townsend v. Munger, 9 Tex. 310; Bayne v. Garrett, 17 Tex. 335; Dancey v. Stricklinge, 15 Tex. 557, 65 Am. Dec. 179; Withers v. Patterson, 27 Tex. 492, 86 Am. Dec. 643. The last case cited is one of those relied upon by the appellees as authority for holding that the order appointing Defee was void. Judge Bell, who rendered the opinion in that case, after an extended discussion of the question involved, uses this language: "Under the circumstances attending the estate of Henry Harrison, as disclosed by the records of the probate court of Colorado county, we do not mean to say that the court did not have the power, under any circumstances, to grant a further administration of thè estate after the discharge of Wadham. But the estate appeared to have been fully administered, and the court had no power to grant further letters of administration, unless a necessity was shown for such further administration. *And here, if the record was entirely silent, or did not forbid such a presumption, in a collateral proceeding like the present, the presumption would perhaps be indulged that the necessity for a further administration was shown to the court.*" (Italics ours.) Our conclusion is that the record does not disclose facts sufficient to invalidate the order of the probate court appointing Defee as administrator of the estate of John Buckley. It follows from this that he had the power to do whatever was necessary and proper under the direction of the court in the further administration of that estate.

[6] The next question presented is: Did the sale of the certificate by Defee·pass all or only John Buckley's community interest to the purchaser? The correct answer to that question depends upon whether or not the sale was made for the purpose of paying community debts. It seems to be conceded by all parties that the certificate belonged to the community estate of John Buckley and his wife, and the court makes an express· finding to that effect. During the lifetime· of John Buckley he, as the husband, had the· control and management of the community property, and could dispose of it for any purpose he saw fit. But when by his death the connubial partnership was dissolved the widow held her half interest as a tenant in common with the children, who succeeded to· their father's portion. The administrator of the husband's estatè could sell or dispose· of her interest only for the purpose of paying· community debts. ·P. D. art. 1363. In other· words, the wife's half of the community property did not become assets in the hands of the husband's administrator except for the purpose of paying community obligatioris.

[7] The rule seems to be well established in this state that one who claims title to the wife's interest under a sale by the husband's administrator or executor has the burden of proving that the property was sold for the purpose of paying community debts. Moody v. Butler, 63 Tex. 210; Roy v. Whitaker, 92 Tex. 346, 49 S. W. 367. The rule announced in these cases is but the application of the· general doctrine requiring a claimant whose rights depend upon showing a good title to establish all the links necessary to complete his chain. The husband's administrator is not, in a general sense, the legal representative of the wife, and can exercise the power of· conveying her property only in certain designated contingencies. To require one claiming the wife's portion through a sale made by the husband's administrator to· prove that the conditions existed in which the special power might be legally exercised is exacting no more than is generally de-·

manded when tracing titles through powers specially granted by private contract. Neither is this an infraction of the rule which protects judgments, regular upon their face, from collateral attack. Only parties and their privies are bound by judgments.

[8] The wife or her heirs can be made parties to the sale of her community interest in the common property by the husband's legal representative in the course of an administration upon his estate only when her property is legally and rightfully taken for the payment of those debts with which it stands charged after the dissolution of the marriage relation. When disposed of for any other purpose by such an administrator she is no more bound by the orders of the probate court directing and approving a sale than any other stranger would be whose property had been wrongfully taken as assets for the payment of the decedent's debts. Roy v. Whitaker, supra.

[9] It is true that the existence of community debts, and that the sale in question was made for their payment, will often be presumed after the lapse of many years when the production of the proof has become difficult or impossible. Hensel v. Kegans, 79 Tex. 347, 15 S. W. 275; Auerbach v. Wylie, 84 Tex. 620, 19 S. W. 856; Stipe v. Shirley, 33 Tex. Civ. App. 223, 76 S. W. 307. But this presumption is one of fact, and not of law, and is indulged from consideration of public policy for the purpose of preserving security and tranquility in the matter of land titles. It operates merely to make a prima facie case in favor of the rightful exercise of the power on the part of the husband's representative. It is not conclusive, and will not be permitted to prevail in the face of satisfactory evidence to the contrary. In the case before us the court found, as a fact, that there were no community debts chargeable against the property of Mrs. Buckley when Defee was appointed administrator.

[10] It cannot be said that this conclusion is unsupported by the evidence. John Buckley had been dead 20 years when Defee was appointed. The witness Judge Parker, who held the office of county clerk with the exception of a short intermission from 1860 to 1876, testified that no claims against the estate were filed during his term. While this testimony may not have been admissible for the purpose of impeaching the judgment appointing Defee as administrator de bonis non, it may properly be considered in determining whether or not there were any community obligations outstanding at the time of his appointment.

[11] It may be that there were taxes and expenses of the administration to be paid; but such expenses and the taxes accruing after the death of John Buckley would not be community obligations for which Mrs.

Buckley's interest in the certificate could be sold.

Appellants cite the case of Dickson v. Moore, 9 Tex. Civ. App. 514, 30 S. W. 76, as opposed to the conclusions here announced. In that case the trial court found, as a fact, that no community obligations existed for which the wife's property could be sold, and affirmed a judgment based upon those findings. Whatever may be inferred from the language employed by the able judge who rendered the opinion in that case, the disposition made of the appeal is fully in accord with the authorities previously cited and with the conclusions here announced.

The judgment of the district court will therefore be affirmed.

### On Motion for Rehearing.

Both parties to this appeal have filed motions for rehearing. Appellees insist that, the trial court having found that the estate of John Buckley had been fully administered by Short and Dysart and that they had been discharged, a judgment should have been rendered in their favor for all of the property in controversy because the grant of a further administration thereafter was void. We may concede that this proposition is correct, but it is predicated upon the assumption that this finding of fact by the trial court is sustained by the evidence.

Appellants have assailed that finding as being unsupported, and we think their contention is justified by the record. The evidence upon which the trial court should have relied in passing upon that particular question is not what the probate court of Shelby county did as disclosed by the parol testimony adduced upon the trial, but what the lost records show that the court did. The testimony of the witness Parker as to what occurred in the matter of discharging Short and Dysart is not to be taken as a substitute for the record, except in so far as it purports to disclose the contents thereof. Ludlow v. Johnston, 3 Ohio, 553, 17 Am. Dec. 609, 631; 10 Enc. Ev. 842. In the case cited above the court uses this language, which is very appropriate in this connection: "But before the contents of a record can be proved it must be shown that it once existed and had been lost by time or accident. This shows that the evidence is not introduced to prove proceedings of a court as resting in parol, but as they once existed of record. But to introduce parol testimony to prove the proceedings of a court of record and then substitute this testimony for the record itself would be a novel proceeding." This being a collateral attack upon the judgment of the probate court appointing Defee as administrator de bonis non, it was necessary to sustain appellees' contention that the record of the probate proceedings in the administration of the estate of John Buckley

should affirmatively disclose that that estate had been fully administered before Defee's appointment was made. Such evidence has not been furnished. Hence we conclude that the judgment of the court was correct, although not in harmony with one of his findings of fact.

We do not base our affirmance of the judgment awarding appellees one-half of the land upon the finding of the trial court that Defee purported to sell only a one-half interest in the land certificate to Winslow. We are inclined to agree with appellants that this finding is not supported by the evidence. We base our affirmance of this portion of the judgment upon the general conclusion that the evidence, taken as a whole, sustains the trial court's conclusion that no community debt existed at the time of this sale. It may be that the testimony supporting this conclusion is meager, but it is sufficient, we think, to overcome the presumption of fact arising from the mere lapse of time that the sale was made for the purpose of paying community debts.

The motions of both parties are overruled.