MRS. NIELS (MELLIE) ESPERSON, EXECUTRIX, ESTATE OF NIELS ESPERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7071. Promulgated May 10, 1928.

*B. F. Louis, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

LOVE: In this proceeding the petitioner, as executrix of the last will of Niels Esperson, deceased, claims the right to deduct from the gross estate of the decedent the full amount of his funeral expenses; while the respondent urges that such expense is a community debt and only one-half of same is deductible from the gross estate of Niels Esperson, deceased. The amount of those funeral expenses is not in dispute. We believe the respondent is in error on this point and so hold. The question will be discussed later in this opinion.

The Commissioner allowed as a deduction only one-half of a debt due by the deceased to his wife, on the ground that such debt was a community debt and only one-half chargeable against the estate of the decedent. The Commissioner was in error on this point. The question will be later discussed.

With reference to assignment of error designated (C), the respondent concedes error, and as stipulated, the proper amount of additional tax paid is $36,070.66.

Before taking up the new issue injected into the case by amended answer by the respondent, wherein he challenged the bona fides of a sale in 1921 of 8,100 shares of stock of the Invincible Oil Corporation, we desire to discuss the subject involved in the community property laws of Texas, which of course involves the rights and liabilities of each spouse's interest in the community property.

Community property laws are no part of the common law. They are purely statutory, but in origin were derived from the civil law and came into several of the States of the Union through Spanish or French domination and influence in the early history of those States. There are eight States that have community property laws but each State has its own peculiar statutory provisions rendering

each different from the others in some respects. Probably the laws on this subject in Texas and in Louisiana are more nearly alike than those of any other two States. It may be pointed out in passing that the statutes of Texas provide that the common law of England as declared by the courts, Federal and State, of the Union shall, so far as consistent with the constitution and laws of the State, be the rule of decision. See Vernon's Civil Statutes, vol. 1, p. 3. As applied to rights and powers of executors, see Vernon's Civil Statutes, art. 3312.

The community property concept is comparable to the title held by tenants in common. In fact it has been pointed out and held by the courts that immediately after the death of one spouse the survivor and the estate of the decedent hold title as tenants in common. The statute prescribes:

Art. 4619. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only. All the effects which the husband and wife possess at the time the marriage may be dissolved, shall be regarded as the common effects or gains, unless the contrary be satisfactorily proven.

See *Merrill* v. *Moore*, 104 S. W. 514.

Article 4613 prescribes:

All property of the husband, both real and personal owned or claimed by him before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired, and the rents and revenues derived therefrom, shall be his separate property. The separate property of the husband shall not be subject to the debts contracted by the wife, either before or after marriage, except for necessaries furnished herself and children after her marriage with him, nor for torts of the wife. During marriage the husband shall have the sole management, control, and disposition of his separate property, both real and personal.

Article 4614, providing for separate property of the wife, is similar in all material respects to article 4613, except that in a conveyance of real estate her husband must join. It may be here pointed out that the provision in article 4614 reading, " and the rents and revenues derived therefrom, the interest on bonds and notes belonging to her, and dividends on stock," was declared unconstitutional by the Supreme Court of Texas in the case of *Arnold* v. *Leonard*, 273 S. W. 799.

When either of the spouses dies, the marital status terminates and hence the community status of the property terminates at once. The property comprising the community estate (if it may be termed an estate) prior to such death, thereafter until partitioned, is held as by tenants in common and belongs one-half to the survivor and one-half to the estate of the decedent, all subject to community debts. *Water-*

*man Lumber & Supply Co.* v. *Robins*, 159 S. W. 360. The executor of the deceased, when he files a schedule of the estate of the decedent, lists such property, (a) items that belonged to the separate estate of deceased, and (b) one-half interest in items that belonged to the community estate. *Slavin* v. *Greever*, 209 S. W. 485. Debts that constitute a liability against the estate, either separate or community, when properly proven and allowed are listed. The cost of administration expenses of last illness and funeral expenses are, by statute, made preferred claims. Article 3531, Texas Statutes. Such expenditures are chargeable against the estate being administered. However a distinction has been drawn by the courts of Louisiana between expenses of last illness and funeral expenses. In the *Succession of Pizzati*, 75 So. 498, the court says:

Funeral bill—$503.75. This expense was incurred after the community acquests and gains had been dissolved by the death of the husband, and should, therefore, be charged, not to the community but to the husband's one-half of the community.

In the *Succession of Casey*, 58 So. 556, the court held that expenses of last illness constituted a debt against the community.

We have been able to find only two Texas cases that appear to involve the point here in issue, viz: *Gilroy* v. *Richards*, 63 S. W. 664; *Goldberg* v. *Zellner*, 235 S. W. 870.

These two last named cases are cited by respondent. In both these cases the decedent owned separate property as well as an interest in community property, both classes going into the schedule of the estate of the deceased. The contests in each case appear to have been out of which property were the funeral expenses to be taken. It is not clear just what the holding of the court was, but it is clear that the funeral expenses constituted a liability against both classes of property and in the *Gilroy* case the court said the primary liability was against the community. Whether the court meant the whole community or only that one-half being administered, is not clear.

Viewing the situation in the light of the general principles relative thereto, we construe that opinion to mean that the one-half of the community then being administered was primarily liable and the separate property secondarily liable. Section 403 of the Revenue Act of 1921 permits the deduction from the gross estate of a decedent's funeral expenses. There has been no question raised as to the correct amount chargeable to funeral expenses in this proceeding. The only issue is whether the whole or only one-half of that amount is deductible. In view of the law applicable thereto, it is our opinion and we so hold, that the whole amount is deductible.

Very much that has heretofore been said in this opinion in principle, applies to the claim for deduction of the whole amount of the

debt due by the decedent to his wife. The amount of that debt is not contested. The petitioner claims the right to deduct the whole amount and the respondent urges that only one-half of same is deductible. Under the decisions of the Supreme Court of Texas there can be no question of the validity of an obligation on the part of a husband to repay money borrowed from his wife, the same being her separate property, or of the binding effect of a gift by the husband to the wife, either of community property or his separate property, so long as such gift does not infringe upon the rights of then existing creditors, and such gift, if so designed, becomes her separate property. An excerpt from *Sparks* v. *Taylor*, 90 S. W. 489, an opinion by the Supreme Court, says:

The cases cited (referring to a number of Texas cases) as well as others which might be referred to, establish as the law in this state these propositions:

1. The husband may enter into contracts with his wife concerning their property rights. He may purchase land from her and he may sell land to her. He may borrow money from her and he may pay the debt just as he would to any other creditor. He may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person. In fact, his power to contract with her seems to be limited only by her incapacity to convey land to him because of the fact that he cannot join her in the conveyance.

The facts in this case are that Niels Esperson held as community property all the stock of the Invincible Oil Co., that is, 999 shares out of 1,000. He gave to his wife to have and to hold as her separate propery 499 shares. In 1919, all that stock was sold to the Invincible Oil Corporation for $5,000,000. The wife was paid her part of the cash payment, and for the deferred payments she received notes payable to her for her part of such balance. Out of the money she so received, she, from time to time, at her husband's request, loaned him money and the amounts of such loans were credited to her account on his books. At the date of his death, October 21, 1922, she had so loaned him a total of $1,353,967.07. The amount of that loan is not contested. The Commissioner determined that the debt due Mrs. Esperson by Niels Esperson's estate was a community debt, and allowed as a deduction from the gross estate only one-half of the debt. Mrs. Esperson (now Mrs. Stewart) testified at the hearing that when Niels Esperson asked for the money, he always asked for a loan; that he promised to repay it and his books disclose that he credited her account with the amount of the loan. The respondent argues that had he borrowed the money from a stranger, his obligation to such stranger would have been a community obligation, and that the loan from the wife is of the same nature.

Besides the testimony of Mrs. Esperson (Stewart) that it was understood and agreed that it would be repaid out of his money, as

between himself and his wife, for money borrowed from her out of her separate funds, a personal obligation on his part is created and if he had owned any separate property, that property would have been primarily subject to the debt.

The situation is exactly the same as though Niels Esperson had possessed, as his own separate property, $1,353,967.07 on deposit at his bank, and had used it to purchase General Motors Stock or any other security. If, as a result of the purchase and sale of such security, he realized a profit of $50,000, he could and would have returned to his bank and to the credit of his separate property account the $1,353,967.07, and the profit would have become community assets.

By reason of the fact that (generally speaking) the husband has the management and control of the wife's separate property, as well as community property, he could, either with or without the knowledge and consent of his wife, have used her money, that is, money on deposit as her separate estate, for the purchase of securities, and on sale of same the proceeds should be handled in the same way as though he had used his own separate funds. If he is permitted to repay to his wife the money so used by him, out of community funds, he is repaying to her only fifty cents on the dollar of money of hers, used by him.

In view of the evidence and the law applicable to the facts, we hold that the entire amount of that indebtedness is deductible from gross estate.

With reference to the remaining issue which involves the ownership of the 8,100 shares of Invincible Oil Corporation stock, the burden of proof on this issue is on the respondent, and he sought to make out at least his prima facie case by proving that Brown, one of the alleged purchasers, was Esperson's brother-in-law, and Peters, the other alleged purchaser, was Esperson's private secretary; that neither of them was financially able to make such a purchase; that the certificates of stock were endorsed by Brown and Peters soon after their receipt, and thereafter held and used by Esperson, and that Mrs. Esperson after the death of Niels Esperson, took back that stock and canceled the charges against Brown and Peters.

Esperson, being deceased, his testimony in regard to his intentions and purposes is wanting. The nature of the transactions is, to say the least of it, unusual and unnatural. We can arrive at a conclusion of fact only by considering all the circumstantial evidence on the question, and such evidence as so submitted leads us to the conclusion that Niels Esperson repurchased for himself the 8,100 shares of stock, and that in fact, such stock belonged to him as community property, at date of his death.

Esperson died October 21, 1922, and the market value of that stock on that date, as shown in our findings of facts, was $16.75 per share, a total of $135,675, and this amount should be substituted in the assets of the estate in lieu of the accounts receivable, valued therein at $91,842.

Counsel for petitioner urges that regardless of the question as to whether it be held that Brown and Peters made a bona fide purchase of that stock, that in view of the fact that it has been established unquestionably that Esperson sold the stock on the New York Stock Exchange in October, 1921, and in view of the fact that the Revenue Act of 1921 did not become effective until November 23, 1921, that section 214 (a) (5) of that Act does not apply in this case, and that even if Esperson had repurchased stock of like kind himself, he would still be within his rights.

This is not an income-tax case dealing with deductions (losses) from gross estate, but an estate-tax case, and the vital question here is whether or not Esperson owned that stock at the date of his death.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*